## WILLCUTS, COLLECTOR OF INTERNAL REVENUE, v. BUNN.

No. 22.   Argued December 2, 1930.—Decided January 5, 1931.

*Assistant Attorney General Youngquist,* with whom *Attorney. General Mitchell,* and *Messrs. J. Louis Monarch* and *Morton Poe Fisher,* Special Assistants to the Attorney General, *Clarence M. Charest,* General Counsel, and *T. H. Lewis, Jr.,* Special Attorney, Bureau of Internal Revenue; were on the brief, for petitioner.

*Mr. Charles Bunn* for respondent.

220

222

*Messrs. Joseph E. Warner,* Attorney General of Massachusetts, *R. Ammi Cutter,* Assistant Attorney General, and *Henry F. Long,* Commissioner of Corporations and

Taxation, by special leave of Court, filed a brief on behalf of the Commonwealth of Massachusetts as *amicus curiae.*

*Messrs. Hamilton Ward,* Attorney General of New York, and *Henry S. Manley,* Assistant Attorney General, by special leave of Court, filed a brief on behalf of the State of New York as *amicus curiae.*

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The respondent, Charles W. Bunn, in the years 1919 and 1920, purchased for cash, as investments, bonds issued by various counties and cities in the State of Minnesota. In January, 1924, he sold these bonds, realizing a net profit of $736.26. Upon this net profit, less a net loss of $41.20 suffered by him on similar bonds held less than two years, the Commissioner of Internal Revenue determined an additional income tax in the amount of $85.44. The plaintiff paid this amount to the Collector, under protest, and claimed a refund upon the ground that the tax was illegal because assessed upon income from municipal bonds. The claim was rejected and this suit was brought against the Collector to recover the money paid.

The complaint, alleging these facts, charged that the Revenue Act of 1924, if thus applied, was unconstitutional and void in that the tax was laid upon the instrumentalities of States. Demurrer to the complaint was overruled by the District Court, and, the defendant having declined to plead further, judgment was entered for the plaintiff. The judgment was affirmed by the Circuit Court of Appeals, and this Court granted a writ of certiorari.

The Revenue Act of 1924 (c. 234, sec. 213, 43 Stat. 253, 267, 268, U. S. C. Tit. 26, sec. 954) clearly authorized the

tax. The Act included in the term " gross income " the gains and profits derived from " sales, or dealings in property, whether real or personal." See *Irwin* v. *Gavit*, 268 U. S. 161, 166. The Act gave an express exemption to " interest upon the obligations of a State, Territory or any political subdivision thereof," but this exemption was not extended to profits realized on the sale of such obligations, and the statement of the Government is not challenged that it has been the uniform practice of the Treasury Department in administering the federal income tax acts to include in taxable income the gain derived from the sale of state and municipal bonds.

The authority of the Congress to lay a tax on the profit realized by an investor from the sale or conversion of capital assets in general is not open to dispute and is not disputed. That is a matter of governmental policy and not of constitutional power.[1] The question raised here is not because the securities sold were capital assets but because they were governmental in character.

The question is further limited by the fact that it does not appear that the securities were issued at a discount, so that the gain derived could be considered to be in lieu of interest. Whatever questions might arise in cases of that sort are not now before the court.[2] The present case is simply one of profit obtained from purchase and sale, without qualification by any special circumstances.

The well-established principle is invoked that a tax upon the instrumentalities of the States is forbidden by

---

[1] *Merchants'. Loan and Trust Co.* v. *Smietanka*, 255 U. S. 509, 519, 520; *Goodrich* v. *Edwards*, 255 U. S. 527; *Walsh* v. *Brewster*, 255 U. S. 536.

[2] It appears that the Treasury Department has ruled that where a municipality originally issues a bond at a discount and redeems it at par, the return represented by the discount is interest in another form and is not taxable. See O. D. 647, Cumulative Bulletin No. 3, July–December, 1920, p. 123; O. D. 737, *id.* p. 49; O. D. 762, Cumulative Bulletin No. 4, January–June, 1921, p. 31.

the Federal Constitution, the exemption resting upon necessary implication in order effectively to maintain our dual system of government.[3] The familiar aphorism is " that as the means and instrumentalities employed by the General Government to carry into operation the powers granted to it are exempt from taxation by the States, so are those of the States exempt from taxation by the General Government." *Ambrosini* v. *United States,* 187 U. S. 1, 7. And a tax upon the obligations of a State or of its political subdivisions falls within the constitutional prohibition as a tax upon the exercise of the borrowing power of the State. *Pollock* v. *Farmers' Loan & Trust Company,* 157 U. S. 429, 584–586; *id.,* 158 U. S. 601, 618; *National Life Insurance Company* v. *United States,* 277 U. S. 508, 521.

The limitation of this principle to its appropriate applications is also important to the successful working of our governmental system. The power to tax is no less essential than the power to borrow money, and, in preserving the latter, it is not necessary to cripple the former by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government. This distinction has had abundant illustration. Thus, while the salary of an officer of the State cannot be taxed by the Federal Government, the compensation paid by a State or a municipality to a

---

[3] *Collector* v. *Day,* 11 Wall. 113, 127; *United States* v. *Railroad Company,* 17 Wall. 322, 327; *Mercantile Bank* v. *New York,* 121 U. S. 138, 162; *Pollock* v. *Farmers' Loan & Trust Company,* 157 U. S. 429, 584–586; *id.,* 158 U. S. 601, 618; *Ambrosini* v. *United States,* 187 U. S. 1, 17; *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514, 523; *National Life Insurance Company* v. *United States,* 277 U. S. 508, 521.

226

consulting engineer, who is neither an officer nor an employee of government, for work on public projects, may be subjected to a federal income tax. *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 524. No constitutional implications prohibit a non-discriminatory tax upon the property of an agent of government merely because it is the property of such an agent and used in the conduct of the agent's operations and necessary for the agency. *McCulloch* v. *Maryland*, 4 Wheat. 316, 436; *Railroad Company* v. *Peniston*, 18 Wall. 5, 33; *Central Pacific Railroad Company* v. *California*, 162 U. S. 91, 126; *Baltimore Shipbuilding Company* v. *Baltimore*, 195 U. S. 375, 382; *Choctaw, Oklahoma & Gulf Railroad Company* v. *Mackey*, 256 U. S. 531, 537. The Congress may tax state banks upon the average amount of their deposits, although deposits of state funds by state officers are included. *Manhattan Company* v. *Blake*, 148 U. S. 412. Both the Congress and the States have the power to tax transfers or successions in case of death, and this power extends to the taxation by a State of bequests to the United States, and to the taxation by the Congress of bequests to States or their municipalities. *United States* v. *Perkins*, 163 U. S. 625; *Snyder* v. *Bettman*, 190 U. S. 249, 253, 254.

In the case of the obligations of a State or of its political subdivisions, the subject held to be exempt from federal taxation is the principal and interest of the obligations. *Pollock* v. *Farmers' Loan & Trust Company, supra*. These obligations constitute the contract made by the State, or by its political agency pursuant to its authority, and a tax upon the amounts payable by the terms of the contract has therefore been regarded as bearing directly upon the exercise of the borrowing power of the government. In *Weston* v. *Charleston*, 2 Pet. 449, 468, 469, where the tax, laid under an ordinance of the city council upon United States stock which had been issued for loans made to the United States, was held invalid, the principle was

thus stated by Chief Justice Marshall: " The right to tax the contract to any extent, when made, must operate upon the power to borrow, before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burden on the operations of government. . . . The tax on government stock is thought by this Court to be a tax on the contract, a tax on the power to borrow money on the credit of the United States, and consequently, to be repugnant to the constitution." This language was applied by the Court in *Pollock* v. *Farmers' Loan & Trust Company, supra* (157 U. S. at p. 586) in holding invalid federal taxation " on the interest " from municipal securities.

But it does not follow, because a tax on the interest payable on state and municipal bonds is a tax on the bonds and therefore forbidden, that the Congress cannot impose a non-discriminatory excise tax upon the profits derived from the sale of such bonds. The sale of the bonds by their owners, after they have been issued by the State or municipality, is a transaction distinct from the contracts made by the government in the bonds themselves, and the profits on such sales are in a different category of income from that of the interest payable on the bonds. Because the tax in question is described as an " income tax " and the profits on sales are included in " income," the distinction is not lost between the nature of a tax applied to interest and that of a tax applied to gains from sales. The federal income tax acts cover taxes of different sorts. *Brushaber* v. *Union Pacific Railroad Company*, 240 U. S. 1, 17; *Stanton* v. *Baltic Mining Company*, 240 U. S. 103, 114. The tax upon interest is levied upon the return which comes to the owner of the security according to the provisions of the obligation and without any further transaction on his part. The tax falls upon the owner by virtue of the mere fact of ownership, regard-

less of use or disposition of the security. The tax upon profits made upon purchases and sales is an excise upon the result of the combination of several factors, including capital investment and, quite generally, some measure of sagacity; the gain may be regarded as " the creation of capital, industry and skill." *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 531.

The tax not being on the obligations of the State or municipality, or on the investment therein, as such, the question is whether the tax must nevertheless be held to be invalid because sales by investors are to be deemed inseparably connected with the exercise of the borrowing power of the State. When the Constitution prohibits States from laying duties on imports, the prohibition not only extends to a tax upon the act of importing, but also to one upon the occupation of the importer or upon the articles imported. A tax on the sale of an article, imported only for sale, is a tax on the article itself. *Brown* v. *Maryland*, 12 Wheat. 419, 444. Similarly, with respect to federal taxation of articles exported from any State, the constitutional inhibition gives immunity to the process of exportation and to the transactions and documents embraced in that process. *Fairbank* v. *United States*, 181 U. S. 283; *United States* v. *Hvoslef*, 237 U. S. 1; *Thames & Mersey Marine Insurance Company* v. *United States*, 237 U. S. 19. Only on that construction can the constitutional safeguard be maintained. Again, when the United States has assumed duties with respect to Indian lands, a State cannot impose an occupation or privilege tax on operations conducted in or upon such lands by lessees who have been constituted federal instrumentalities for the purpose of discharging the Government's obligation, *Choctaw, Oklahoma & Gulf Railroad Company* v. *Harrison*, 235 U. S. 292, 298, or upon the leases themselves or capital stock representing them, *Indian Territory Illumi-*

*nating Oil Company* v. *Oklahoma*, 240 U. S. 522, 530, or upon the net income of such a lessee, *Gillespie* v. *Oklahoma*, 257 U. S. 501, 504. See, also, *Jaybird Mining Company* v. *Weir*, 271 U. S. 609, 612.[4] These cases are not analogous to the one under consideration. If the tax now in question is to be condemned, it must be because of practical consequences and not because purchases and sales by private owners of state and municipal bonds are a part of the State's action in borrowing money. It would be far-fetched to say that such purchases and sales as instrumentalities of the State. They are not transactions made directly or indirectly in behalf of the State or in the course of the performance of any duty of the State. Sales are merely methods of transferring title to the obligation, that is, the right to receive performance of the promise of the State or municipality.

That a transfer of government bonds is not inseparably connected with the exercise of the Government's borrowing power so as to make the transfer *per se* immune from taxation is clearly demonstrated by the decisions upholding non-discriminatory taxation laid upon the transmission of such securities upon the death of the owner. This Court has decided that a State may lay a transfer tax upon a legacy although it consists entirely of bonds of the United States, *Plummer* v. *Coler*, 178 U. S. 115, and that the Congress may tax the transfer of the net assets of a decedent's estate although municipal bonds are included in determining the net value, *Greiner* v. *Lewellyn*, 258 U. S. 384. In *Plummer* v. *Coler, supra* (p. 125), the tax of the State was sustained, despite the provision of the Act of Congress under which the bonds were issued that they should be exempt " from taxation in any form by or under State, municipal, or local authority." *Id.*, pp. 134,

---

[4] Compare *McCurdy* v. *United States*, 246 U. S. 263; *Shaw* v. *Gibson-Zahniser Oil Corporation*, 276 U. S. 575, 578, 579.

135; Act of July 14, 1870, c. 256, sec. 1, 16 Stat. 272; Rev. Stat., sec. 3701; U. S. C., Tit. 31, sec. 742. See, also *Orr* v. *Gilman*, 183 U. S. 278, 289; *Blodgett* v. *Silberman*, 277 U. S. 1, 12, 13. And in *Greiner* v. *Lewellyn, supra* (p. 387), the Court said that " the estate tax . . . like the earlier legacy or succession tax, is a duty or excise, and not a direct tax like that on income from municipal bonds. *Pollock* v. *Farmers' Loan & Trust Company, supra.* . . . Municipal bonds of a State stand in this respect in no different position from money payable to it. The transfer upon death is taxable, whatsoever the character of the property transferred and to whomsoever the transfer is made. It follows that in determining the amount of decedent's net estate municipal bonds were properly included." On similar grounds, as the Federal Government has power to tax transfers of property by gift *inter vivos, Bromley* v. *McCaughn*, 280 U. S. 124, there would seem to be no question of its constitutional authority to include in such taxation gifts of state or municipal securities.

It is urged, however, that a federal tax on the profits of sales of such securities should be deemed, as a practical matter, to lay such a burden on the exercise of the State's borrowing power as to make it necessary to deny to the Federal Government the constitutional authority to impose the tax. No facts as to actual consequences are brought to our attention, either by the record or by argument, showing that the inclusion in the federal tax of profits on sales of state and municipal bonds casts any appreciable burden on the States' borrowing power. We are left to the inadequate guidance of judicial notice. It may be considered to be a matter of common knowledge that the bonds of States and their municipalities are for the most part purchased for investment. But while, in the language of the tax act regarding deductions for losses, the purchase of municipal bonds for investment, as in the

case of other investments, may be regarded as "entered into for profit" as distinguished from mere personal use, it may be doubted whether the prospect on the part of the ordinary investor of obtaining profit on the resale of such obligations is so important an element in inducing their acquisition that a federal tax laid on such profits, in common with profits derived from the sales of other property, constitutes any substantial interference with the functions of state governments. While the tax is laid on gains, there is also a deduction for losses on sales, and whether investors in such securities would consider it an advantage if both provisions were eliminated is a matter of mere speculation. It must be remembered that we are dealing, not with any express constitutional restriction, but only with an asserted implication. The constitutional provisions authorizing the Congress to lay taxes (Article I, Section 8; Sixteenth Amendment) are certainly broad enough to cover the tax in question, and before we can restrict their application upon the ground of a burden cast upon the State's borrowing power, where the tax is not laid upon the contracts made by the State in the exercise of that power, or upon the amounts payable thereunder, but is laid upon the result of distinct transactions by private owners, it must clearly appear that a substantial burden upon the borrowing power of the State would actually be imposed. But we have nothing but assertion and conjecture. The assertion might as easily be made as to the necessity of the complete immunity of such securities from federal taxation in the case of estate taxes, and, if mere conjecture were sufficient as to the possibility of a burden being cast by the tax on the essential authority of the State, it could be as readily entertained in the one case as in the other. Indeed, the existence of the illegal burden might be more easily assumed in the case of the estate tax, where the entire value of the securities, and not merely gains on sales, are taken into the reckoning in determining the amount of the tax.

There is, however, an outstanding fact, more important than any possible conjecture. That fact is found in uniform and long-established practice. This practice clearly indicates that neither the Federal Government nor the States have found a tax on the profits of the sales of their securities to be a burden on their power to borrow money. So far as we are advised, the Federal Government has not at any time deemed it to be necessary to exempt from taxation the profits realized by owners on the sale of its obligations, with the exception, recently made, of short-term Treasury bills issued on a discount basis and payable without interest.[5] Such profits are included in the general

[5] In *Gray* v. *Darlington*, 15 Wall. 63, where the question related to the federal tax under the Act of March 2, 1867, 14 Stat. 477, 478, upon the profits on the sale of bonds of the United States, the point of the decision was that the statute applied only to *annual* " gains, profits and income " and did not extend to the increase in value of the bonds which had taken place in several prior years and was realized in the preceding year. But it was not questioned that annual gains or profits on the sale of government bonds were taxed by the Act. See *Hays* v. *Gauley Mountain Coal Co.*, 247 U. S. 189, 191.

In O. D. 729, Cumulative Bulletin No. 3, July–December, 1920, pp. 123, 124, the Treasury Department ruled: " In the case of Treasury certificates of indebtedness which are offered by the Government at par and accrued interest and not at a discount, only the coupon interest can be considered exempt from normal tax, and from surtax to the extent provided by the act approved September 24, 1917. Where such certificates are subsequently purchased at a discount, the difference between the purchase price and the par value of the certificates received at maturity is profit subject to both normal tax and surtax. The subscriber for Treasury certificates who sells them at a discount sustains a deductible loss, which is the difference between the par value of the certificates and the selling price. Any gain or loss on the sale of Treasury certificates of indebtedness prior to maturity should be determined in accordance with section 202 of the Revenue Act of 1918."

In the 71st Congress, 1st session, an amendment was proposed to section 5 of the Second Liberty Bond Act as amended (40 Stat. 290,

phrase " gains, profits and income " from " sales, or deal-
ings in property," in the Act under consideration. And
we understand that under all federal income tax acts,
these or similar words have been construed invariably by
the administrative authorities as including profits derived
from the sale of state and municipal bonds. The present
case appears to be the first in which the tax in this respect
has been assailed. No State has ever appeared at the Bar
of this Court to complain of this federal tax, and it is not
without significance that in the present instance the

U. S. C., Tit. 31, § 754), providing for the issue of Treasury bills " on
a discount basis and payable at maturity without interest " and that
[subdivision (b)] all certificates of indebtedness and treasury bills
issued thereunder " both as to principal and interest, *and any
gain from the sale or other disposition thereof shall be ex-
empt* from all taxation (except estate or inheritance taxes) now or
hereafter imposed by the United States, or by any local taxing
authority; *and no loss from the sale or other disposition thereof shall
be allowed as a deduction, or otherwise recognized, for the purposes of
any tax now or hereafter imposed by the United States or any of its
possessions.*" H. R. 1648, 71st Cong., 1st sess. The committee re-
ports in the Senate and House of Representatives state that the
amendment, in relation to both certificates of indebtedness and the
new Treasury bills, " provides that gain from the sale of either shall
be tax exempt, with the necessary supplementary provision that any
loss shall not be recognized. Inasmuch as these are short-term obli-
gations, any advance in price will as a practical matter represent
nothing more than interest."' 71st Cong., 1st sess., H. R. Rep. No.
13, Sen. Rep. No. 9. The words above italicized were, however,
omitted in the act as passed. Act of June 17, 1929, c. 26, 46 Stat.
19, 20. By Act of June 7, 1930 (c. 512, 46 Stat. 775), a similar pro-
vision as to tax on profits on sales, but limited to the short-term
Treasury bills issued at a discount, was enacted. The committee
report in the House of Representatives stated that the reason for
this enactment was found in the special nature of such Treasury bills.
71st Cong., 2d sess., H. R. Rep. Nos. 1609 and 1759. Aside from
these Treasury bills, the federal tax on profits on sales of federal
securities has not been changed.

States of New York and Massachusetts do appear here as *amici curiae* in defense of the tax.[6]

The history of income tax legislation is persuasive, if not controlling, upon the question of practical effect. *Plummer* v. *Coler, supra,* (pp. 137, 138). Before the power of the Congress to lay the excise tax in question can be denied in the view that it imposes a burden upon the States' borrowing power, it must appear that the burden is real, not imaginary; substantial, not negligible. We find no basis for that conclusion, nor any warrant for implying a constitutional restriction to defeat the tax.

*Judgment reversed.*

---

[6] Undoubtedly each of these States has in view the circumstance that it subjects to its own income taxation the gains derived from the sale of federal securities, and it does not desire, in the absence of an applicable legislative restriction, to be deprived of that source of revenue as a corollary of a decision against the power of the Federal Government to tax the gains derived from the sale of state securities. The State of New York disavows any claim that " the tax in question has any appreciable tendency to burden its fiscal operations " or those of its municipalities. The State of Massachusetts contends that: " 1. The non-discriminatory taxation of all gains derived from the use of business knowledge and of human ingenuity in dealings in intangible property can have no material effect to impair the ability of a government to issue its bonds and obligations, even if gains from the sale of such bonds are subjected to the tax. 2. The history of the exemption of state instrumentalities from Federal taxation and of the exemption of Federal instrumentalities from state taxation reveals that the doctrine of exemption has protected governmental obligations only from taxation of the principal amount of such obligations and of the stated interest upon such obligations."