JAMES E. SAGUE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19648.   Promulgated June 16, 1931.

*Sanford Robinson*, Esq., for the petitioner.
*J. E. Marshall*, Esq., for the respondent.

738

* OPINION.

GOODRICH: The law controlling the principal issues of this case has been determined by recent decisions of the Supreme Court. In *Willcuts, Collector* v. *Bunn*, 282 U. S. 216, it was held that profit realized from the disposition of state or municipal bonds is subject to Federal income tax. In *Denman* v. *Slayton*, 282 U. S. 514, distinguishing *National Life Insurance Co.* v. *United States*, 277 U. S. 508, it was held that interest paid to purchase or carry tax-exempt securities is not deductible from income. The Denman-Nauts case involved sections 213 (b) (4) and 214 (a) (2) of the Revenue Act of 1921. The same provisions of the Revenue Act of 1918 contain no material differences affecting the instant case. Clearly, therefore, any profit derived upon the sale or exchange of his tax-exempt securities is taxable to petitioner; and amounts paid as interest to

purchase or carry such securities are not deductible from his income. In the light of these decisions, only the following problems remain for determination by us in the case at bar:

(1) Whether the exchange made by petitioner in October, 1920, of his holdings of Brown Brothers & Company's receipts for bonds of the State of West Virginia was a transaction giving rise to taxable profit or deductible loss.

(2) Whether any part of the bonds of the State of West Virginia so acquired by petitioner may be regarded as interest upon a State's obligation so that the receipts of proceeds of a sale thereof would amount to a collection by him of nontaxable interest; and,

(3) Whether the interest paid by petitioner in 1920 upon money borrowed to purchase or carry his Brown Brothers & Company's receipts is deductible from income.

The exchange of deposit receipts for bonds was made by petitioner in 1920 and is subject therefore to the provisions of the Revenue Act of 1918. Section 202 (b) of that act provides in part as follows:

When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss, be treated as the equivalent of cash to the amount of its fair market value, if any * * *.

Section 213 (a) of the same act provides that gross income shall include " gains, profits and income derived from * * * sales, or dealings in property * * * or any source whatever." Under these provisions of the statute it seems clear that profits arising from this exchange in 1920 were taxable, provided only that the property (bonds) received in the exchange had a fair market value. It is stipulated that the bonds on the date of the exchange had a fair market value of $53,574.80. We find, therefore, that the taxable profit derived by petitioner upon said exchange in 1920 was $10,437.07, being the difference between $53,574.80, the then fair market value of the bonds, and $43,137.73, the cost of the deposit receipts exchanged therefor. See *George M. Wright*, 19 B. T. A. 541; *I. Bertram Marston*, 17 B. T. A. 730; *Empire Loan & Trust Co.*, 13 B. T. A. 633; *S. R. Rosenberg*, 13 B. T. A. 503; *Arthur P. Pearce*, 13 B. T. A. 150.

We can not agree with petitioner's argument that the sale of the bonds of West Virginia, so far as they represent interest on the old Virginia debt, is equivalent to a sale of interest coupons, or a collection of interest upon the obligations of a State and so tax exempt. There was here a complete novation. West Virginia discharged its obligation under the judgment rendered against it by the issue of its bonds. These bonds were sold on the open market at a certain price and some of them were acquired by petitioner in exchange for his Brown Brothers Company receipts, which had a certain cost. This, as we have pointed out, was a taxable exchange of property, establishing a new basis for the property (bonds) received

in the exchange. We believe it immaterial for what purpose the State of West Virginia issued its bonds. It issued them in certain denominations; they had a certain market value and they can not be broken down into elements of principal and interest with respect to the cause of their issuance. These bonds were complete and legal evidences of an obligation of the State, each to the amount of its face value or denomination, and we must treat them as such.

In our opinion the interest paid to purchase or carry the receipts issued by Brown Brothers & Company to represent Virginia debt certificates is not deductible from petitioner's income. These receipts, beyond doubt, represented the beneficial interest in the "certificates" which were obligations of the Commonwealth of Virginia. Examination of the "Deposit Receipts" and "Deferred Certificates" discloses that the receipts were issued only as certificates were deposited, and identified by number and amount the certificates which each represented, and that Brown Brothers & Company assumed no liability of any kind except to hold the deposited certificates in accordance with the terms of the agreement. Brown Brothers & Company were mere depositaries, issuing, for certificates of beneficial interest in and to securities held in trust, negotiable receipts so that the interests of the owners of the certificates passed by delivery of the receipts. That being so, interest paid by petitioner to purchase or carry his "Deposit Receipts" was in fact expended to purchase and carry obligations of the Commonwealth of Virginia and, under the decisions above cited, is not deductible from his gross income.

Reviewed by the Board.

*Decision will be entered under Rule 50.*