## LANDON et al. v. COMMISSIONER OF INTERNAL REVENUE. *

### No. 385.

Circuit Court of Appeals, Second Circuit.

June 20, 1932.

Sanford Robinson, of New York City, for petitioners.

G. A. Youngquist, Asst. Atty. Gen. (Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and C. R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This petition to review presents the question whether the petitioners are liable for income tax in 1920 when a profit accrued to the deceased taxpayer through a transaction whereby certain bonds of the state of West Virginia were received in exchange for deposit receipts theretofore purchased. Section 202(b), Revenue Act of 1918, 40 Stat. 1057, 1060.

In 1914 and 1919, the petitioners' intestate purchased, on the New York Stock Exchange, for $43,137.73, bankers' deposit receipts which had been issued for deferred Virginia debt certificates of a par value of $73,144.03. He exchanged these receipts, on October 4, 1920, for 20-year 3½ per cent. gold bonds of the state of West Virginia of the par value of $66,484.85. The bonds then had a fair market value of $53,574.80. On February 10, 1921, he purchased a fractional amount of $15.15 of these bonds for $12.27. He sold the bonds in 1921 for $53,587. The bonds were issued in 1919 in payment of a judgment with interest entered in 1915 by the state of Virginia as the result of a suit to compel the state of West Virginia to pay her share of the old public debt for which Virginia claimed West Virginia was liable when the states separated. On January 1, 1861, Virginia had outstanding $30,000,000 in bonds. When West Virginia separated, she denied responsibility on this bonded indebtedness, but the Supreme Court of the United States determined that West Virginia was liable in the sums of $4,215,622.28, principal of the debt, and $8,178,307.22, interest accruing from 1861 up to the entry of the judgment on July 1, 1915. Commonwealth

of Virginia v. State of West Virginia, 238 U. S. 202, 35 S. Ct. 795, 59 L. Ed. 1272. The interest on the total sum of $12,393,929.50 from July 1, 1915, until paid by the issuance of the bonds, at the rate of 5 per cent. per annum, amounted to $2,168,937.66. Thus, of the par value of the bonds issued by the state of West Virginia, approximately ten-fourteenths thereof was in payment of interest, both upon the original indebtedness and upon the total judgment.

Decedent kept his books and made his tax returns upon a cash receipts and disbursement basis. His profit for the calendar year 1921 on this transaction was $10,437, the difference between the cost of the deposit receipts, plus the cost of the fractional part of a bond, and the sales price of the bonds. The taxpayer contended that the respondent erred in not excluding from taxable income for the year 1921 the gain resulting from the sale of the bonds of the state of West Virginia. The respondent claimed that this income was taxable in the year 1921, or, in the alternative, that the deceased received taxable income in the year 1920 in the sum of $10,-437.07, being the difference between the purchase price of the deposit receipts and the fair market value of the bonds received in exchange, and claimed in the alternative an increased deficiency for 1920 based on the inclusion of the amount of $10,437.07. The Board held that the exchange of the deposit receipts for the bonds resulted in a taxable transaction in 1920, and that no part of the bonds could be treated as a collection of non-taxable interest on a state's obligation. Accordingly, the respondent increased the deficiency for 1920 and granted an order holding that an overpayment was made for the year 1921, based upon the inclusion for income of that year of the profit from the sale of the bonds theretofore reported by the decedent. The administrators of the decedent have appealed.

When the decedent in 1914 purchased the Virginia debt certificates, he obtained an interest in the claim against West Virginia. It was a claim which later had fruition in a judgment, and he thereupon obtained an equitable interest in that judgment through his ownership of the certificates. The judgment was made up of principal and interest when the bonds of West Virginia were issued. When, in 1920, he obtained the bonds of West Virginia, he made an exchange of securities. Section 202(b) of the Revenue Act of 1918, 40 Stat. 1060, provides that, "when property is exchanged for other property, the property received in exchange shall for the

purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any." And section 213 provides that "'gross income'—(a) Includes gains, profits, and income derived from * * * dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; (b) Does not include the following items, which shall be exempt from taxation under this title: * * * (4) Interest upon (a) the obligations of a State. * * *" (40 Stat. 1065).

▮ Treasury Regulations 45, art. 1563, requires that the property received, on which gain or loss is to be computed, as the result of an exchange, must be property substantially and not formally different from the property disposed of, and must have a market value. As an illustration, it refers to the exchange of listed stock for Liberty bonds; income may be realized because the exchange is for different property having a market value. In the instant case, the taxpayer, prior to the exchange, held securities of the state of Virginia representing that portion of its debt due from West Virginia. In exchange he received a new kind of security, a new obligor, a new absolute promise, and a new rate of interest. This was property substantially and essentially different from that disposed of, and had an ascertainable market value. In Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 127, 75 L. Ed. 304, the taxpayer in 1919 and 1920 purchased bonds issued by the various cities and counties of Minnesota. He sold the bonds in 1924 and realized a net profit. The Commissioner assessed the tax on this profit. The taxpayer sued to recover the tax, alleging that the Revenue Act of 1924, if thus applied, was unconstitutional in that it laid a tax upon instrumentalities of a state. The court held that the tax was authorized by section 213 of the 1924 Revenue Act (26 USCA § 954) which provided that gross income included gains or profits from sales or dealings in personal property. Interest upon state obligations is exempt, but the exemption is not extended to profits realized on the sale of state obligations. The securities there were not issued at a discount, so the court was not called upon to say whether the gain derived could be considered to be in lieu of interest. The question presented was one merely of profit obtained by the sale, and that profit was held taxable. The court said: "The sale of the bonds by their owners, after they have been issued by the State or municipality, is a transaction distinct from the contracts made by the government in the bonds themselves,

and the profits on such sales are in a different category * ʳ ˙ from that of the interest payable on the bonds. * * * The tax upon profits made upon purchases and sales is an excise upon the result of the combination of several factors, including capital investment and, quite generally, some measure of sagacity; the gain may be regarded as 'the creation of capital, industry and skill.'" A state may impose a transfer tax upon a legacy, although it consists entirely of United States bonds. Plummer v. Coler, 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998. Congress may tax the transfer of the net assets of a decedent's estate even though municipal bonds are included in determining the net value. Greiner v. Lewellyn, 258 U. S. 384, 42 S. Ct. 324, 66 L. Ed. 676.

■ Although the exchange here concerned only state obligations, it did result in a gain or profit subject to taxation under section 213. The exchange was a dealing in property with no different legal consequences than a purchase and sale of bonds, as in the Willcuts Case. A profit resulting from the exchange of state securities should be taxable. That portion of the bonds of West Virginia covering interest on the Virginia debt was in fact interest, but it was transferred in payment for the debt certificates and was not interest in the ordinary sense, but rather gain or profit derived from an exchange for the West Virginia bonds. At the time, Virginia was not paying interest, but was agreeing to turn over anything it might get out of another state if and when it received it. When decedent exchanged his deposit receipts, they had attained appreciation. The decedent got them for less than par and made a profit selling at a higher price. Therefore, when West Virginia paid by issuing its bonds, it paid a debt owing to Virginia, and, since the decedent received a security of greater value than what he paid for it, it was a taxable profit.

■ But decedent collected interest due from the date of each of his purchases of debt certificates; this interest was paid by the state of West Virginia. That which accrued prior to the entry of judgment found its way in the judgment, and that which accrued after the judgment, as well as that accruing before the judgment, was paid by West Virginia bonds. This was interest paid on the state's obligation, and is therefore exempt from taxation. After purchase, the decedent was entitled to future interest on his principal which he used in the purchases. This applied to interest before as well as after the decree, and profit on this sum of interest is not tax-able. The bonds of West Virginia, given in satisfaction of a decree, were not first allocated to interest. Therefore, in determining the profit upon which a tax may be imposed, it is necessary to first find what portion of the decree, together with the interest to the date of satisfaction of the judgment, is represented by the capital and accrued interest on the whole claim to the date of each purchase. Such capital and accrued interest is to be computed from the amounts fixed in the decree, and the taxable income will be the same proportion of the gross profits; that is to say, the difference between the value of the West Virginia bonds received and the price paid by the taxpayer. The balance represents what is received as interest after the purchase, and is exempt. There is an item of compound interest, but it is part of the interest paid by the state accruing after the purchase by the decedent.

The order of the Board of Tax Appeals will therefore be reversed, with instructions to modify its order so as to give effect to this item of interest in the decedent's taxes.

Order reversed.