FRANCES B. ELDREDGE, J. HAMPDEN DOUGHERTY, JR., AND CITY BANK FARMERS TRUST COMPANY, EXECUTORS OF THE ESTATE OF SENECA D. ELDREDGE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MYRON G. DARBY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NATT T. WAGNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT F. HAWKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52988, 52989, 53378, 53379, 62887, 62922, 63191, 64502.

Promulgated August 29, 1934.

*Abraham Lowenhaupt, Esq., Stanley Waite, Esq.,* and *J. Hampden Dougherty, Jr., Esq.,* for the petitioners.
*Brooks Fullerton, Esq.,* for the respondent.

OPINION.

SEAWELL: The respondent determined deficiencies, now in controversy, as follows:

| | Docket No. | Year | |
|---|---|---|---|
| | | 1927 | 1929 |
| Estate of Seneca D. Eldredge | 53378 | $28,694.28 | |
| Do | 64502 | | $27,125.37 |
| Myron G. Darby | 52988 | 13,042.86 | |
| Do | 62922 | | 4,175.91 |
| Natt T. Wagner | 53379 | 4,462.60 | |
| Do | 62887 | | 1,931.55 |
| Robert F. Hawkins | 52989 | 10,226.85 | |
| Do | 63191 | | 4,648.59 |

A stipulation and accompanying exhibits contain the facts upon which the cases were submitted. The stipulation provides:

1. That the eight above captioned cases be consolidated for the purpose of hearing and decision.

2. Eldredge & Company was a partnership formed in 1919 and was, during the years 1927 to 1929, inclusive, a dealer in securities, including securities the income from which is exempt from Federal Income Tax.

3. During the year 1927, the firm of Eldredge and Company consisted of four partners whose interests in the net income, after partners' drawing accounts and interest on capital had been deducted from net income, were as follows:

| | $95,000.00 of such income | Remainder |
|---|---|---|
| Seneca D. Eldredge | 55% | 49½% |
| Myron G. Darby | 25% | 22½% |
| Robert F. Hawkins | 20% | 18% |
| Natt T. Wagner | | 10% |

4. During the year 1929, the firm of Eldredge and Company consisted of four partners whose interests in the net income, after partners' drawing accounts and interest on capital had been deducted from net income, were as follows:

| | |
|---|---|
| Seneca D. Eldredge | 40% |
| Myron G. Darby | 25% |
| Robert F. Hawkins | 20% |
| Natt T. Wagner | 15% |

5. During the year 1927, Eldredge and Company realized net gain in the amount of $353,263.30 from the purchase from states or subdivisions thereof of securities (the interest from which was exempt from Federal Income Tax) issued by such states or subdivisions thereof and the sale of such securities at a profit, and during the year 1929 realized net gain in the sum of $276,872.27 from the same sources. Transactions of the kind referred to in this paragraph are sometimes herein referred to as gains from dealing in tax-free securities.

6. It is customary for a state, city or other governmental unit or subdivision, which desires to raise funds by issuing tax-free securities, to sell such securities to a dealer or group of dealers. This method of disposing of securities is, and in 1927 to 1929 was, almost invariably utilized by government bodies in order to be certain of obtaining the desired amount of funds upon a definite date.

7. An arrangement by the body politic for a sale of its securities to a dealer facilitates the projects of the public officials with respect to determining the rate of interest, the maturity date and the other provisions to be set out in tax-free securities which are about to be issued.

8. The business of acting as a dealer in tax-free securities consists of purchasing such securities from the governmental body or unit by which the same are issued, as obligor, and reselling such securities to the investing public.

9. Tax-exempt securities are disposed of by governmental bodies by sale in the open market which is usually the result of negotiation or competitive bidding. An imposition of income tax upon the gain derived from a resale of such securities is a factor in the determination of the amount the dealer will bid, and tends to decrease the amount of the bid.

10. In the event that the gains from tax-free securities mentioned in paragraph 5 are taxable under the applicable revenue statutes, the deficiencies as shown by the deficiency notices attached to the petitions in the above entitled cases are correct.

11. In the event that said gains are not taxable under the applicable revenue statutes, the respective "net income corrected" of the respective petitioners, as shown in the deficiency notices, should be decreased by their respective portions, as above shown, of the gains thus determined not to have been taxable.

12. Photostatic copies of the Federal Income Tax Returns for the partnership of Eldredge and Company for 1927 and 1929 and for each of the said four partners for 1927 and 1929 are submitted herewith, hereby referred to and made a part of this stipulation of fact.

Seneca D. Eldredge, a resident of the State of New York, died testate about October 9, 1931, and shortly thereafter the petitioners in Docket Nos. 53378 and 64502 were duly appointed and qualified as executors of his estate and have since so served and are still acting as such.

The only issue raised by the pleadings which is insisted upon by the petitioners is stated in brief in their behalf, as follows:

These cases raise just one legal question, namely: Can the Commissioner of Internal Revenue oblige the partners in Eldredge & Company to pay an income tax upon such profits of said firm as result from the business of purchasing direct from the issuing states or municipalities the public obligations of such governmental bodies and reselling these identical securities to the investing public? The Commissioner ruled that such profits are subject to Federal income tax. Petitioners appeal to the Board, contending that the Commissioner's ruling is erroneous and that such a tax would be unconstitutional.

The respondent asserts that the Constitution does not prohibit Congress from passing acts authorizing the imposition of an income tax on gains derived by a dealer who purchases in the open market directly from a state or municipality public obligations or bonds issued by it and later sells them at a profit, under the same or similar circumstances as existed in the instant cases.

In behalf of the petitioners, it is insisted that the issuing and selling of bonds of their own issue by states or their municipalities is an essential governmental function and the sale of such bonds, therefore, is not subject to interference or restriction by the Federal

Government, by taxation or otherwise. It is further insisted, and is stated in the stipulation, that it is customary for a governmental unit or subdivision thereof, which desires to raise funds by issuing tax-free securities, to sell such securities to a dealer or group of dealers and that an imposition of an income tax upon the gain derived by a dealer from a resale of such securities is a factor in the determination of the amount the dealer will bid and tends to decrease the amount of his bid.

In support of petitioners' contention several authorities are cited. *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U.S. 429, is cited to sustain the assertion made in the brief that it is clear that the imposition of a tax on the dealer's profits " must operate on the power to borrow before it is exercised " and shows that the Federal income tax can not constitutionally be applied to the gains or profits here in question. The above partial quotation is from the *Pollock* case, *supra*, wherein Chief Justice Marshall is quoted as saying in *Weston* v. *City Council of Charleston*, 2 Pet. 449, 468, " The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised and have a sensible influence on the contract."

In our opinion there is quite a difference in the imposition of a Federal tax on the profits of a dealer who realizes the profit from the *resale* of securities he has purchased directly from a state or municipality, and the imposition of such a tax on any bond or contract of the state or municipality itself. The fact that the imposition of such a tax in the latter case would be unconstitutional, in our opinion, does not warrant the conclusion drawn by petitioners' counsel that a Federal tax imposed on a dealer's profits from the *resale* of such securities would likewise be unconstitutional, on the theory that it would place a burden upon the state, county, or municipality in the disposal of such bonds or securities. In our opinion, the taxing of the dealer's profits arising from resale of bonds, though a possible factor in the determination of the amount the dealer may bid for the bonds, is a very minor item in such determination. The major factors by which the dealer would be influenced almost entirely would be (1) the amount he believes the public will pay for the bonds and (2) the amount which his competitors may bid, both being matters of opinion and the exercise of good judgment.

In our opinion, and we so hold, the interference with governmental functions of the state or municipality, under the circumstances shown by the record, is so remote and insignificant that the imposition of the tax in question is not unconstitutional.

The petitioners' counsel in their brief cite *Metcalf & Eddy* v. *Mitchell*, 269 U.S. 514, and, as sustaining their insistence, quote therefrom as follows: " this Court has repeatedly held that those agencies through

which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other." (p. 522.) Immediately preceding the quotation is this statement by the Court: " Just what instrumentalities of either a state or the Federal government are exempt from taxation by the other·cannot be stated in terms of universal application. But "—(then follows petitioners' quotation).

The fallacy of the petitioners' argument and reliance on the brief quotation from *Metcalf & Eddy* v. *Mitchell, supra*, is in the assumption that Eldredge & Co. in the purchase and sale of the securities was an agency or instrumentality through which certain states or subdivisions thereof were immediately and directly exercising their sovereign powers.

The facts stipulated, in our opinion, show that the partnership of Eldredge & Co. was not an instrumentality of the states or municipalities in the purchase of bonds or securities in which the partnership was dealing. The partnership was clearly an independent contractor. It acquired the bonds or securities by arm's length negotiations or as the result of competitive bidding.

As shown by the record, except for the actual purchase of the bonds or securities by the partnership of Eldredge & Co., there was no contractual relation between the states or municipalities and the partnership. The contract of purchase was consummated at the time the offer was accepted, the bonds delivered, and payment made. There was no executory contract in effect. There was no occasion or right on the part of the states to exercise any supervision over the partnership. There was nothing in the contract of purchase which would give the states any such right. When the purchase was effected the partnership was at liberty to hold or sell the bonds as it chose. Its election to do the one or the other did not in any way affect the obligations of the states on the bonds. It is obvious that the partnership was not an officer, employee, or instrumentality of the states or municipalities.

Numerous authorities are cited by the respondent to sustain his contentions and the validity of the tax imposed in the instant cases, but we do not think much discussion of them necessary. The principles which are controlling herein are, in our opinion, so fully discussed and clearly enunciated in *Willcuts* v. *Bunn*, 282 U.S. 216; *Group No. 1 Oil Corp.* v. *Bass*, 283 U.S. 279; *Burnet* v. *Coronado Oil & Gas Co.*, 285 U.S. 393; *Fox Film Corp.* v.*Doyal*, 286 U.S. 123; *Fullilove* v. *United States*, 71 Fed. (2d) 852; 293 U.S. 586, and other cases cited, as to make further discussion of them unnecessary.

The petitioners in their reply brief undertake to show that the facts in the instant cases are so different from those in *Willcuts* v.

*Bunn, supra,* that the principles enunciated in the latter and approved in later cases are not applicable to the former. Some points of difference are indicated and emphasized, but, in our opinion, they are not such as to render inapplicable the principles enunciated in the cases above enumerated.

The tax in question is not imposed because the petitioners or the partnership of Eldredge & Co. purchased bonds or securities from any state or municipality. The immediate transaction or contract between the state or municipality and Eldredge & Co. with respect to the bonds purchased does not give rise, as we have before indicated, to any taxable income. The tax is imposed on the profits reaped by the dealer when he sells the bonds in the open market to the buying public. The tax does not operate upon the state's contract the instant it was made and has no sensible influence upon such contract. *Weston* v. *City Council of Charleston, supra.*

The petitioners complain and assert that there is discrimination against them in the imposition of a tax on the profits on the dealer's sale of tax-exempt bonds when the dealer is not permitted to deduct from income the interest paid on a loan which was made to purchase or carry such bonds or securities. Congress has taken the view that when income (interest) earned by the bonds is exempt from tax, interest paid on loans to carry the bonds may not be deducted from income, and in so enacting, we discover nothing illegal or discriminating in such law. The question so raised by the petitioners has been too long and too often decided adversely to petitioner's insistence to require discussion. " The classification complained of is not arbitrary, makes no improper discrimination, does not result in defeating any guaranteed exemption, and was within the power of Congress," as was said by the Supreme Court, in deciding the same principle or question on facts similar to those in the instant cases, in *Denman* v. *Slayton*, 282 U.S. 514.

Having thoroughly considered the authorities cited and arguments presented by counsel on both sides, we are of the opinion and hold that the partnership of Eldredge & Co. was not an employee or instrumentality of the states or municipalities from which it purchased securities the income from which is exempt from Federal income tax, but was an independent contractor, and that the taxing of the profits arising from the resale of such securities purchased directly from a state or municipality in the open market is too remote to constitute an interference with or restriction upon the governmental functions of the state and does not cast a substantial burden upon it.

*Judgment will be entered for the respondent in each of aforesaid dockets.*