MOUNTAIN PRODUCERS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44573. Promulgated April 23, 1936.

410

*Harold D. Roberts, Esq., Randolph E. Paul, Esq.,* and *Charles McInnis, Esq.,* for the petitioner.

*R. P. Hertzog, Esq., Conway N. Kitchen, Esq.,* and *V. F. Weekley, Esq.,* for the respondent.

414

OPINION.

SEAWELL:  There is no controversy as to the right of the Wyoming Associated Oil Corporation to an allowance for depletion on its interest in the properties in question; nor is there any dispute as to what the allowable depletion is, on the basis of cost, which is stipulated. The main problem for consideration and determination is what is meant by "gross income" for the purpose of computing depletion on the percentage basis. There is no disagreement on the proposition that the taxpayer may avail itself of whichever basis results in the greater depletion.

Under the contracts between the Wyoming Associated Oil Corporation and the Midwest Refining Co., the latter company took delivery of the oil purchased "at the outlet gates of the measuring tanks located at or near the wells."

The average field price of oil or market price of oil in the Salt Creek Field, Wyoming, during the year 1925 was $1.808605 per barrel. In behalf of the Wyoming Associated Oil Corporation (and

in behalf of petitioner) it is contended that the "gross income" upon which depletion allowance of 27½ percent applies should be based on the market value of the oil produced or at least on the amount actually received, plus the operating expenses of the Midwest Refining Co., which in the consolidated return was claimed as $2,215,862.23, now stipulated to be $2,816,520.04.

Section 204 (c) (2) of the Revenue Act of 1926 provides:

In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

It is specifically stated in the statute that the allowance for depletion shall not exceed 50 percent of the "net income of the taxpayer (computed without allowance for depletion) from the property." We are of the opinion and hold that, in arriving at the amount of depletion allowable under said section, development expense should not be deducted from the gross income from the property in arriving at the net income therefrom for the purpose of applying the depletion limitation of 50 percent of the net income. See *Ambassador Petroleum Co.* v. *Commissioner*, 81 Fed. (2d) 474. In the instant case, in our opinion, it is logical to conclude that the words "gross income" to which the rate of 27½ percent applies means the gross income of the Wyoming Associated Oil Corporation for the year 1925 from its property subject to depletion. See *Everett J. Crews*, 33 B. T. A. 36, 49.

It is argued in behalf of the petitioner that in the particular circumstances of the instant case, if the allowance for depletion on a percentage basis is limited to 27½ percent of the amount actually received by the Wyoming Associated Oil Corporation for the oil produced from the properties subject to depletion, it does not receive as great an allowance as if it were operating the properties itself, since in that event the amount it received from the oil would be greater. Such might be the situation of any owner of oil properties which does not choose to operate its properties itself. It is the insistence of the respondent that the amount received by any holder of an interest in oil properties other than the one actually operating the property is the gross income which is subject to the 27½ percent depletion deduction, and, regardless of the fact that such amount is net in so far as the cost of producing the oil is concerned, the taxpayer is not permitted in such cases to base the percentage allowance on the amount received plus the cost of operations or on the market price of the oil produced. If the base determined by the

respondent for computing percentage depletion is not considered satisfactory, the taxpayer, as we have heretofore indicated, may compute its allowance for depletion on the basis of cost, if that method results in a greater depletion allowance. See section 204 (a) and (b) of the Revenue Act of 1926. *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312.

There are numerous cases involving the application of percentage depletion, but we are aware of none in which the peculiar circumstances shown in the instant case were present.

In *Helvering* v. *Twin Bell Oil Syndicate, supra,* the question for decision was as to the total allowance for depletion permitted and its apportionment between lessor and lessee where the income is derived from operation under an oil and gas lease. The Supreme Court decided the depletion allowance permitted an assignee or lessee named in an oil and gas lease should be limited to 27½ percent of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer. The lessor, likewise, was entitled to a depletion allowance of 27½ percent of the gross income received by it from the oil and gas production. The royalties paid out by the Twin Bell Oil Syndicate were obviously a part of the gross income from the property, but nevertheless as held by the Supreme Court the royalties so paid could not be considered a part of the gross income to be used for computing the depletion allowable to the taxpayer.

It is insisted in behalf of the petitioner that under the provisions of the agreements with the Midwest Refining Co. whereby the properties were operated, the cost of the operations and development expenses were a part of the purchase price paid the Wyoming Associated Oil Corporation for the oil and should, therefore, be considered as a part of the "gross income from the property." It is not shown that the Wyoming Associated Oil Corporation included in its return for 1925 any such expense as part of its gross income. Such expense as the Midwest Refining Co. incurred in rendering alleged services to the Wyoming Associated Oil Corporation, under circumstances shown, was not, in our opinion and we so hold, income to the latter.

Under the contract between the parties, the petitioner contends that the market value of the oil produced should be taken as the gross income for the purpose of computing percentage depletion, on the theory that the value of the services rendered by the Midwest Refining Co. in operating the leases was a part of the purchase price of the oil and that the value of such services should be assumed or considered to be the difference between the market value of the oil and the contract price.

There is, in our opinion, no sound basis for the assumption that the value of the services rendered by the Midwest Refining Co. in producing the oil should be considered as a part of gross income of the Wyoming Associated Oil Corporation. It is natural and reasonable, however, to assume that the Midwest Refining Co., by purchasing all of the oil which was produced under the leases in question for a number of years and assuming the burden and risks incident to the operation and development thereof during that period, paid less for the oil than if it were buying the oil on the open market after it was produced and without assuming any burden in connection therewith. The value fixed or placed by the parties upon the services rendered would seem to be none other than the actual cost of such services, which is the amount actually expended by the Midwest Refining Co. in producing the oil and not necessarily the difference between the market value and the contract price of the oil. There is no evidence nor reason apparent to us to justify the assumption that such costs as stipulated do not represent the full cost of operation of the properties.

Cases in which taxpayers are permitted to use the field market price for the purpose of computing depletion are those in which the product was not sold until it had been converted into a refined product or transported a considerable distance to the consumer. A portion of the selling price in that event naturally represented an amount received for the conversion or for the transportation which can not be used as the basis for computing depletion. See *Brea Canon Oil Co.*, 29 B. T. A. 1134; affd., 77 Fed. (2d) 67; certiorari denied, 296 U. S. 604; *Consumers Natural Gas Co.*, 30 B. T. A. 1263; affd., 78 Fed. (2d) 161; certiorari denied, 296 U. S. 634; *Greensboro Gas Co.*, 30 B. T. A. 1362; affd., 79 Fed. (2d) 701; certiorari denied, 296 U. S. 639.

In the class of cases cited, *supra*, it was necessary to allocate the amount received, and the market price of the oil was assumed to be the portion of the selling price which was received for the raw product, the balance representing the amount attributable solely to manufacturing and transporting the product.

The market price of the oil in those cases was merely used as a basis of allocation of the total amount received in the absence of a more definite basis for determining the amount of gross income subject to depletion or in cases where the gross income could not be otherwise ascertained.

In the instant case, the Wyoming Associated Oil Corporation did not conduct any manufacturing operations or transport the product to individual consumers; in fact, it did not itself operate the prop-

erty and produce the raw material. There is, therefore, nothing to allocate or segregate in this case.

The respondent allowed percentage depletion on the gross income which the Wyoming Associated Oil Co. is shown to have actually received in 1925 pursuant to the contracts entered into in 1923, and to allow such sum to be arbitrarily increased by the amount of operating expenses of the Midwest Refining Co. or to the market price of the oil in effect during 1925, we hold, would be allowing the Wyoming Associated Oil Corporation depletion on a basis in excess of that authorized by the statute. Any allowance for depletion is a matter of grace and unless Congress has provided for depletion there can be no deduction therefor. *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56; certiorari denied, 284 U. S. 666. Congress no doubt intended that the allowance for depletion be as uniform as possible, though at times it might appear that there were "unjust and unequal results." *Helvering* v. *Twin Bell Oil Syndicate, supra.*

The fact that the Wyoming Associated Oil Corporation, by reason of its failure to operate its oil properties itself, may receive, as heretofore indicated, less depletion than it would have received had it operated them or less than other taxpayers who operated their own similar properties is immaterial. There are many reasons why the depletion allowance to the taxpayer may not be the same where it operates the properties and where it does not. Many different facts and circumstances must be taken into consideration in determining the depletion in different cases and naturally, in consequence, depletion results may vary. While this was well known to Congress, it provided, as one of the methods that a taxpayer might adopt, that depletion may be computed at the rate of $27\frac{1}{2}$ percent of the gross income, though such income would vary in different cases and under different circumstances, as all taxpayers would not receive the same prices for their product and some might operate their properties themselves while others might do so through others, as was done in the instant case. In other words, Congress saw proper to base percentage depletion allowance on gross income actually received by the taxpayer from its property or interests therein.

The record shows that the respondent in his computation of the $27\frac{1}{2}$ percent depletion used as a base the amount of gross income which the Wyoming Associated Oil Corporation actually received from the Midwest Refining Co. during 1925. We are of the opinion and hold that no error was committed in using such base for that computation. We think, for reasons briefly stated herein, that the base for computing percentage depletion should not, in the particular circumstances of this case, be either the market price of the oil produced from the said properties or the amount of money re-

ceived by the Wyoming Associated Oil Corporation from sale of oil to the Midwest Refining Co. increased by the amount of the cost of services rendered by the Midwest Refining Co. in the matter of the oil production.

■ The second assignment of error is based primarily on the decision of the Supreme Court of the United States in *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393. In that case, which followed the court's earlier decision in *Gillespie* v. *Oklahoma*, 257 U. S. 501, the Supreme Court held that the income derived by the Coronado Oil & Gas Co. under oil and gas leases executed to it by the state upon portions of the public school lands of the state was exempt from Federal income tax, for the reason that the leases to the said company were instrumentalities of the state for the purpose of "carrying out her duty in respect of public schools. To tax the income of the lessee arising therefrom would amount to an imposition upon the lease itself." In so deciding, the Court stated that the doctrine of *Gillespie* v. *Oklahoma, supra,* should be applied "strictly and only in circumstances closely analogous to those which it disclosed."

The respondent contends that the circumstances of the instant case are not "closely analogous" to those in *Burnet* v. *Coronado Oil & Gas Co., supra*; that the instant case is clearly distinguishable from it and therefore not controlled by the principle therein enunciated and applied.

On February 1, 1923, a trust agreement was entered into between the Midwest Oil Co. and the Wyoming Associated Oil Corporation, under which the Midwest Oil Co. was to hold in trust for the Wyoming Associated Oil Corporation one-half the benefits and net proceeds realized by the Midwest Oil Co. from a lease of October 1, 1919, which it held from the State of Wyoming, covering school section 36 embraced in the trust.

The lease agreement of October 1, 1919, was superseded by another lease, dated April 19, 1923, between the same parties. It was this latter lease that was in force during the taxable year (1925) involved herein. It was executed between the State of Wyoming and the Midwest Oil Co. solely. It contained a provision against assignment to any one without the consent of the State of Wyoming. The record does not disclose any assignment thereof, either with or without such consent.

The income which the Wyoming Associated Oil Corporation received from the aforesaid school section 36, held by the Midwest Oil Co., was by virtue of the declaration of trust of February 1, 1923, made by the Midwest Oil Co. prior to the lease of April 19, 1923, which superseded that of October 1, 1919. There was no lease of said land to the Wyoming Associated Oil Corporation by the

State of Wyoming. The Wyoming Associated Oil Corporation had no contractual relationship with the State of Wyoming, which leased said school land section in question to the Midwest Oil Co., solely.

The burden of operating the lease, the payment of royalties, and the responsibility for compliance with the numerous provisions of the lease agreement rested directly upon the Midwest Oil Co., which was solely responsible to the State of Wyoming. The declaration of trust under which the Wyoming Associated Oil Corporation realized its income from this school land, in our opinion, is not an instrumentality of the State of Wyoming through which the state exercised sovereign power of maintaining and operating its public schools. Therefore, the situation, in so far as the Wyoming Associated Oil Corporation is concerned, not only is not "closely analogous" to the situation in *Burnet* v. *Coronado Oil & Gas Co.*, *supra*, but is different in the material point which entitled the Coronado Oil & Gas Co. to tax immunity in that case.

The facts and circumstances in the instant case are not in all respects the same as those in *Wanless Iron Co.*, 29 B. T. A. 834; affd., 75 Fed. (2d) 779; certiorari denied, 295 U. S. 765, but, in our opinion, are sufficiently similar in their essential aspects to make applicable and controlling, on the issue now being discussed, the principles therein enunciated and the authorities therein cited. In the *Wanless Iron Co.* case, *supra*, the petitioner claimed exemption from tax on income realized by it on certain mineral lands owned by the State of Minnesota and leased to one Wanless, who assigned the leases to the petitioner therein, and, subject to subsequent subleases, the petitioner had since been the owner of the leases. Neither the original lessee and assignor nor the petitioner, the assignee and sublessor, ever extracted or sold ore from the lands. The sublessees were the only ones that produced and sold ore from the lands. The royalty paid the state was by the sublessees. The petitioner there paid no royalty to the state. Its claim of tax exemption in the circumstances of that case was denied by the Board, and the determination of the Board was affirmed by the United States Circuit Court of Appeals, as heretofore stated.

In the *Wanless* case the original lease provided that the lessee might sublet the same. In the instant case there was no such provision, but, on the contrary, one against assignment without approval of the state, the laws of Wyoming forbidding the assignment of state mineral leases except upon its written consent. See Wyoming Revised Statutes, 1931, Ann., ch. 91, art. 806.

Under the agreement of February 1, 1923, referred to in our findings of fact, it is the Midwest Refining Co. that contracted to do the actual operations under certain leases (which included the school land heretofore mentioned) in the Salt Creek Oil Field.

As stated by the Court of Claims in *Marland* v. *United States*, 3 Fed. Supp. 611, "The immunity from taxation applies only where the tax would be a real and direct burden upon the state's exercise of its governmental functions." See same case, 53 Fed. (2d) 907; certiorari denied, 290 U. S. 658. There is no proof here that the tax asserted would be a "real and direct burden" upon the State of Wyoming. Nothing in the record indicates that the imposition or payment of the tax asserted in this instance would in any way burden or interfere with the state in the exercise of its governmental functions. The execution of the declaration of trust of February 1, 1923, which entitled the Wyoming Associated Oil Corporation to share equally with the Midwest Oil Co. in the benefits and proceeds derived from the lease of section 36, was a distinct transaction and trust between private owners to which the state was not a party and the income realized as a result thereof is, in our opinion, in the same status as income realized from the sale of a state lease, which was held not to be exempt in the *Marland* case above cited and in *Rice Oil Co.* v. *United States*, 7 Fed. Supp. 414. See also *Willcuts* v. *Bunn*, 282 U. S. 216, in which an exemption was denied to income realized from the sale of municipal bonds the interest on which is exempt from tax. *Eckstein* v. *United States*, 10 Fed. Supp. 231 (Ct. Cls.); *Hobart Iron Co.*, 29 B. T. A. 855; and *Bankline Oil Co.*, 33 B. T. A. 910. Cf. *Metropolitan Building Co.* v. *United States*, 12 Fed. Supp. 537.

The income which the Wyoming Associated Oil Corporation received from the said school land section 36 was by virtue of the declaration of trust in its favor by the Midwest Oil Co. Such did not create any privity of contract or constitute any contractual relationship whatever with the State of Wyoming.

It is insisted by petitioner's counsel that the exclusion from consideration herein of oral evidence tendered for the purpose of showing that the State of Wyoming recognized the Wyoming Associated Oil Corporation as its direct lessee of said school section is error. The evidence offered was received in order that the record might show what it was, but it was with the understanding that it would be stricken as inadmissible upon respondent's objection then made, petitioner's counsel being granted an exception to such action so taken. We think and hold that in so ruling no error was committed. The lease of the school section of land by the State of Wyoming was made in writing to the Midwest Oil Co. and only to it. The oral testimony offered and excluded from consideration in the determination of the issue involved would (if admitted and considered) have violated a well recognized rule of evidence. "Parol testimony can not be received to contradict, vary, add to or subtract from the terms of a valid written instrument." Jones on Evidence (Civil Cases,

3d Ed.), sec. 434, p. 656. See also *Garden City Feeder Co.* v. *Commissioner*, 75 Fed. (2d) 804; *Pugh* v. *Commissioner*, 49 Fed. (2d) 76, in effect affirming 17 B. T. A. 429; certiorari denied, 284 U. S. 642.

After carefully considering the evidence, arguments, and authorities relative to this issue, though all have not been discussed herein, we are of the opinion and hold that the respondent did not err in his determination that the $185,438.83 added to taxable income in the deficiency notice is not exempt, but is subject to income tax.

3. The third assignment of error relates to depletion and the cost basis to be used in computing depletion in lieu of percentage depletion in the event that depletion based on cost should be greater than such percentage depletion. The stipulations enumerate the numerous tracts involved, including the aforesaid section 36, and state as to each the unrecovered capital sum returnable on January 1, 1925, through depletion upon the basis of cost.

The petitioner contends that it is entitled to a greater amount of depletion than was allowed under the percentage computations as computed and allowed by the respondent. We have herein determined the principles to be applied in determining the 27½ percent depletion based upon gross income and also those applying to depletion based on cost.

Under the facts as stipulated and established by evidence, we are of opinion and hold that the petitioner is entitled to a recomputation under Rule 50 and to have allowed as depletion whichever amount is the greater—depletion based upon cost, or percentage depletion based upon gross income computed as we have indicated.

*Decision will be entered under Rule 50.*