Prosser v. Comm'r

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2014

Nos. 13-4526-ag (L), 13-4527-ag (CON)

ROBERT L. PROSSER, III, MARY C. PROSSER, MCGEHEE FAMILY
CLINIC, P.A.,

*Petitioners-Appellants*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,
*Respondent-Appellee.*

---

Appeals from the United States Tax Court, Nos. 15646-08, 15647-08.

---

ARGUED: OCTOBER 8, 2014
DECIDED: FEBRUARY 4, 2015

---

Before: JACOBS, SACK, and DRONEY, *Circuit Judges*.

---

Appeal from orders of the United States Tax Court upholding accuracy-related penalties against Petitioners under § 6662A of the Internal Revenue Code for understatements attributable to their involvement in the Benistar 419 Plan and Trust. The Tax Court held that the Benistar Plan was substantially similar to the listed tax-avoidance transaction described by the Internal Revenue Service in Notice 95-34. The Tax Court also held that Petitioners had adequate notice of the penalties under § 6662A and that the increased penalty rate under § 6662A(c) applied. We **AFFIRM**.

JOHN T. MORIN (Ira B. Stechel, *on the brief*), Wormser, Kiely, Galef & Jacobs LLP, New York, NY, *for Petitioners-Appellants*.

RANDOLPH L. HUTTER (Tamara W. Ashford, Acting Assistant Attorney General; Thomas J. Clark, *on the brief*), Tax Division, Department of Justice, Washington, D.C., *for Respondent-Appellee*.

DRONEY, *Circuit Judge*:

Robert and Mary Prosser ("the Prossers") and the McGehee Family Clinic ("the Clinic," and collectively "Petitioners") filed petitions for redetermination in the United States Tax Court

challenging the Commissioner of Internal Revenue's ("Commissioner") determination of tax deficiencies and assessment of penalties against them under § 6662A of the Internal Revenue Code, 26 U.S.C. § 1 *et seq.* ("I.R.C."). The Commissioner had determined that Petitioners were deficient based on a contribution by the Clinic to a multiple-employer welfare benefit plan, the Benistar 419 Plan and Trust ("the Benistar Plan" or "the Plan"), which the Commissioner concluded was not an "ordinary and necessary" business expense within the meaning of I.R.C. § 162(a). The Commissioner also determined that the Benistar Plan was "substantially similar" to the listed tax-avoidance transaction described by the Internal Revenue Service ("IRS") in I.R.S. Notice 95-34, 1995-1 C.B. 309 ("Notice 95-34").[1] Because the Prossers had an understatement of income on their joint personal return attributable

[1] Notice 95-34 is one of thirty-four currently recognized tax-avoidance transactions identified by the IRS in formal guidance pursuant to I.R.C. § 6707A(c)(2). *See* Recognized Abusive and Listed Transactions, IRS, http://www.irs.gov/Businesses/Corporations/Listed-Transactions---LB&I-Tier-I-Issues (last visited February 3, 2015).

to the Clinic's contribution to the Benistar Plan, the Commissioner assessed an accuracy-related penalty against them under I.R.C. § 6662A, as well as an increased accuracy-related penalty against the Clinic.

Petitioners and other participants in the Benistar Plan who had been assessed similar deficiencies by the Commissioner agreed to be bound by the final resolution of a petition for redetermination in *Curcio v. Commissioner*, 99 T.C.M. (CCH) 1478, 2010 WL 2134321 (2010). In *Curcio v. Commissioner*, 689 F.3d 217 (2d Cir. 2012), this Court affirmed the Tax Court's decision that employer contributions to the Benistar Plan were not "ordinary and necessary" business expenses within the meaning of the I.R.C. *Id.* at 225. As a result, the Tax Court in these proceedings upheld the Commissioner's determination of tax deficiencies against Petitioners based on the Clinic's contribution to the Benistar Plan. The only issue in this

consolidated appeal[2] is whether the Tax Court was justified in upholding the Commissioner's imposition of additional accuracy-related penalties under I.R.C. § 6662A, an issue not resolved in the *Curcio* proceedings.

For the reasons set forth below, we hold that the Benistar Plan is substantially similar to the listed tax-avoidance transaction identified by the IRS in Notice 95-34. We therefore uphold the Commissioner's assessment of accuracy-related penalties against the Prossers and the Clinic under I.R.C. § 6662A. We also hold that Petitioners had adequate notice of the potential for penalties under § 6662A and that the increased penalty rate under § 6662A(c) applies to the Clinic. Accordingly, we **AFFIRM** the decisions of the Tax Court.

---

[2] The Prossers and the Clinic filed separate Tax Court petitions, which were consolidated before the Tax Court. Separate notices of appeal were subsequently filed.

5

**BACKGROUND**

**I.     The Benistar Plan**

Petitioners and the Commissioner "stipulated into the record in this case [*Curcio*'s] evidence and trial testimony." *McGehee Family Clinic, P.A., v. Comm'r*, 100 T.C.M. (CCH) 227, 2010 WL 3583386, at *1 (2010). We therefore rely on *Curcio*'s factual findings concerning the Benistar Plan.

The Benistar Plan was established in 1997 and was designed to be a multiple-employer welfare benefit plan under I.R.C. § 419A(f)(6). Its stated purpose was to allow employers to provide "death benefits funded by individual life insurance policies for a select group of individuals chosen by the Employer." *Curcio*, 689 F.3d at 220 (quoting the Benistar Plan brochure). While I.R.C. § 419 generally imposes limits on the amount an employer can deduct for contributions to a welfare benefit fund, the Benistar Plan was intended to fall within § 419A(f)(6)'s exemption from deduction

limits for contributions made to "any welfare benefit fund which is part of a 10-or-more employer plan." I.R.C. § 419A(f)(6)(A).

Employers that were enrolled in the Benistar Plan contributed to a trust account operated by the Plan that was used to pay premiums on life insurance policies for certain employees, which included "one or more key Executives on a selective basis." *Curcio*, 2010 WL 2134321, at *2, *5. However, the individual employee participants selected the insurance policies. Employers could also contribute additional amounts above the amount the Benistar Plan required to keep the underlying insurance policy active. *Id.* at *5. These additional contributions "remain[ed] in the trust account," were "not used to make additional payments on the underlying insurance policy," and would have substantial cash value based on the portion of the contributions not necessary for coverage. *Id.* Claiming that the Plan fell within § 419A(f)(6)'s exemption from deduction limits, the promoters of the Benistar Plan informed

participating employers that tax deductions for these contributions, which the plan separately recorded for each employer, were "[v]irtually [u]nlimited." *Id.*

Employers could terminate their participation in the Benistar Plan at any time. *Id.* at *6. From mid-2002 to mid-2005, the Benistar Plan distributed the underlying policies of terminated accounts to the insured employees for ten percent of the cash surrender value of the policy. *Id.* Beginning in mid-2005, the Benistar Plan began to charge covered employees the entire fair market value of their underlying policy when the employer terminated participation. *Id.* at *7. However, the Benistar Plan did not require this payment immediately, but rather allowed the insured employee to borrow from the trust the cost of the purchase, providing as collateral the insurance policy itself. *Id.* In lieu of charging interest on the loan, the Benistar Plan charged an insured employee ten percent of the net surrender value of the policy, which had to be prepaid at the

time the insured employee requested to withdraw the underlying policy. *Id.*

To summarize, the Benistar Plan allowed employers to make tax-free contributions for life insurance policies for certain "key" employees, and allowed additional contributions—also tax-free—above what was required to cover the potential death benefits of the policies. Those employees could then "retrieve the value in those policies with minimal expense" after participation in the Benistar Plan was terminated. *Id.* at *20.

In *Curcio*, the Tax Court held that contributions to the Benistar Plan by certain other businesses—a construction company, a mortgage broker, and automobile dealerships—were not "ordinary and necessary" business expenses eligible for deduction under I.R.C. § 162(a). *Id.* The Tax Court explained that taxpayers "used [the] Benistar Plan to funnel pretax business profits into cash-laden life insurance policies over which they retained effective control. As a

9

result, contributions to [the] Benistar Plan are more properly viewed as constructive dividends to petitioners and are not ordinary and necessary business expenses under [§] 162(a)." *Id.* at *13. According to the Tax Court, the Benistar Plan was "a thinly disguised vehicle for unlimited tax-deductible investments." *Id.* at *20.

This Court affirmed the Tax Court's decision in *Curcio*, explaining that "contributions [to the Benistar Plan] were made solely for the personal benefit of petitioners," and "were a mechanism by which petitioners could divert company profits, tax-free, to themselves, under the guise of cash-laden insurance policies that were purportedly for the benefit of the businesses, but were actually for petitioners' personal gain." *Curcio*, 689 F.3d at 226. As a result, we held that the Tax Court was correct in concluding that contributions to the Benistar Plan were not deductible by those businesses, and that the employees in whose name these contributions were made should have listed the contributions as

10

personal income. *Id.* Penalties under I.R.C. § 6662A, however, were not at issue in *Curcio* because § 6662A penalties only applied to tax returns filed after October 22, 2004, *see* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 812(f), 118 Stat. 1418, 1580, and *Curcio* involved improper deductions in returns filed prior to October 2004, *see Curcio*, 689 F.3d at 220-22.[3]

## II. Accuracy-Related Penalties Against Petitioners Under I.R.C. § 6662A

### A. Factual Background[4]

Dr. Robert Prosser, a family medicine physician, was the sole owner and an employee of the McGehee Family Clinic, a C

---

[3] In *Curcio*, we upheld penalties against the petitioners under I.R.C. § 6662(b)(1)-(2), but those provisions require a determination of negligence. *See Curcio*, 689 F.3d at 229. Section 6662A, however, was enacted in 2004 and imposes penalties on tax-avoidance arrangements similar to "listed transaction[s]" as described in the I.R.C. Only the penalties imposed on the Clinic and the Prossers under § 6662A are at issue here.

[4] While most of the parties' stipulation of facts involved *Curcio*'s record, the parties also stipulated in the Tax Court to factual matters related to the Prossers' and the Clinic's involvement in the Benistar Plan, as described below.

corporation[5] and family medicine practice in McGehee, Arkansas. The Clinic enrolled in the Benistar Plan in May 2001 and first claimed a deduction for a contribution to the Plan on the tax return it filed in 2002. The Clinic then made a $50,000 contribution to the Benistar Plan during its 2004 tax year on behalf of Dr. Prosser, and claimed a $45,833 deduction for that contribution.[6] Although IRS Form 8886, a "Reportable Transaction Disclosure Statement," was available to the Clinic, the Clinic did not file any document disclosing its involvement in the Benistar Plan with its tax return for the 2004 tax year. The Prossers did not include the amount of the Clinic's contribution to the Benistar Plan on Dr. Prosser's behalf as income in their joint personal tax return, which they filed in 2005 for the tax year ending December 31, 2004.

---

[5] A C corporation is a separate legal entity for tax purposes, which is governed by subchapter C of the I.R.C. and functions as a conduit for attributing gains and losses to its owner. *See Sidell v. Comm'r*, 225 F.3d 103, 105 (2d Cir. 2000).

[6] We refer to the Clinic's tax year ending March 31, 2005 as its 2004 tax year. Only the contribution during the 2004 tax year is at issue here. It is undisputed that the actual cost of term life insurance coverage for Dr. Prosser for that year was much less than the amount of the deduction taken by the Clinic.

On March 21, 2008, the Commissioner sent Notices of Deficiency to the Clinic for deducting its contribution to the Benistar Plan during its 2004 tax year, and to the Prossers for failing to report the Clinic's contribution as taxable income. The Commissioner also imposed accuracy-related penalties against Petitioners under I.R.C. § 6662A, which establishes a twenty-percent penalty for "reportable transaction understatement[s]" attributable to a "listed" tax-avoidance transaction or a transaction "substantially similar" thereto. I.R.C. §§ 6662A(a), (b)(2)(A); 6707A(c)(2). The penalty rate is increased to thirty percent under § 6662A(c) for understatements that do not meet the disclosure requirements of § 6664(d)(2)(A).[7] The Commissioner imposed penalties at the rate of twenty percent in the amount of $3,500 against the Prossers, and at the increased

[7] Section 6664(d)(2)(A) was redesignated as § 6664(d)(3)(A) in 2010. *See* Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, § 1409(c)(2)(A), 124 Stat 1029, 1069. Although it does not appear Congress updated § 6662A(c) to reflect the redesignation of § 6664(d)(2)(A) to § 6664(d)(3)(A), the redesignation was effective beginning March 30, 2010, well after the tax years at issue and the petitions were filed in this case. All subsequent citations to § 6664(d)(2)(A) in this opinion refer to § 6664(d)(2)(A) in effect prior to its 2010 redesignation.

rate of thirty percent in the amount of $4,812.47 against the Clinic.

*B. Procedural History*

On June 25, 2008, Petitioners filed petitions in the Tax Court for redetermination of the deficiencies assessed by the Commissioner in connection with their involvement in the Benistar Plan. Petitioners also challenged the Commissioner's assessment of § 6662A accuracy-related penalties against them.

On the question of whether contributions to the Benistar Plan were "ordinary and necessary" business expenses eligible for deduction, Petitioners stipulated that they would be bound by the outcome of *Curcio*. This Court in *Curcio* affirmed the Tax Court's conclusion that contributions to the Benistar Plan were not "ordinary and necessary" business expenses within the meaning of the I.R.C. *Curcio*, 689 F.3d at 225. After the *Curcio* decision, the Tax Court in these proceedings upheld the Commissioner's determinations of deficiency and imposition of I.R.C. § 6662A

14

penalties against Petitioners. The only issue appealed from the Tax Court's decision was whether the Commissioner properly imposed penalties against Petitioners under § 6662A for understatements attributable to a listed tax-avoidance transaction.

In the Tax Court, the Commissioner argued that the Benistar Plan was substantially similar to the tax-avoidance transaction identified by the IRS in Notice 95-34, which describes certain welfare benefit plans that improperly claim to satisfy the multiple-employer exemption from deduction limits. I.R.S. Notice 95-34, 1995-1 C.B. 309. Notice 95-34 explains which plans fail to qualify for the exemption under I.R.C. § 419A(f)(6) and why contributions to these plans are not ordinary and necessary business expenses eligible for deduction. *Id.*

Relying on the record in *Curcio*, the Tax Court issued a Memorandum Opinion finding that the Benistar Plan "obtains similar types of tax benefits and is factually similar to the listed

transaction in Notice 95-34." *McGehee Family Clinic, P.A.*, 2010 WL 3583386, at *4. The Tax Court explained that, like the arrangements described in Notice 95-34, the Benistar Plan "claimed to satisfy the requirements for the 10-or-more-employers-plan exemption under [§] 419A(f)(6) and offered life insurance." *Id.* at *4. The "benefits of enrollment listed in the packet sent to newly enrolled employers included 'virtually unlimited deductions.'" *Id.* at *3. The life insurance policies administered by the Plan "required large contributions relative to the cost of the amount of term insurance that would be required to provide the death benefits under the arrangement." *Id.* at *4. Relatedly, the Plan "permit[ted] employers to make contributions larger than those necessary to maintain the policy," and "the contribution [was] used only for the policy to which it [was] allocated." *Id.*

The Tax Court also explained that Benistar Plan participants "had the right to receive the value reflected in the underlying

16

insurance policies purchased by [the] Benistar Plan despite the fact that the payment of benefits by [the] Benistar Plan seemed to be contingent upon an unanticipated event." *Id.* There was "no reason ever to forfeit a policy to the plan" and the evidence showed that "most participants in [the] Benistar Plan and their beneficiaries receive their benefits despite the alleged contingency of those benefits on the occurrence of an unanticipated event." *Id.* Although the Tax Court noted that the Benistar Plan did not reduce benefits if the assets derived from an employer's contributions were insufficient to fund the benefits, as some of the plans described in Notice 95-34 do, the Benistar Plan did "maintain separate accounting of the assets attributable to contributions made by each subscribing employer in an internal spreadsheet." *Id.*

Based on this analysis, the Tax Court found that the Benistar Plan was expected to obtain the same type of tax benefits as, and was factually similar to, the arrangements described in Notice 95-34.

*Id.* Thus, the Tax Court concluded that the Benistar Plan was "substantially similar" to a listed tax-avoidance transaction and upheld the Commissioner's assessment of § 6662A penalties against Petitioners. The Tax Court also concluded that the Clinic "did not disclose its participation in [the] Benistar Plan in accordance with [§] 6664(d)(2)(A)," and consequently was subject to the increased thirty-percent penalty rate under § 6662A(c). *Id.* at \*5.

After this Court issued its *Curcio* decision, the Tax Court entered an Order and Decision on September 3, 2013, upholding the Commissioner's deficiency determinations and assessment of penalties against Petitioners based on its Memorandum Opinion. Petitioners appealed on November 29, 2013, and the appeals were consolidated on January 24, 2014.

**DISCUSSION**

**I. Standard of Review**

This Court reviews the Tax Court's "legal conclusions *de novo*

18

and its factual findings for clear error." *Callaway v. Comm'r*, 231 F.3d 106, 115 (2d Cir. 2000). Mixed questions of law and fact "are reviewed *de novo*, to the extent that the alleged error is in the misunderstanding of a legal standard." *Diebold Found., Inc. v. Comm'r*, 736 F.3d 172, 183 (2d Cir. 2013); *see* I.R.C. § 7482(a)(1) ("The United States Courts of Appeals . . . shall . . . review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury . . . .").

Whether the Benistar Plan is "substantially similar" to the tax-avoidance transaction identified in Notice 95-34, and whether the Clinic "adequately disclosed" the relevant facts concerning its contribution to the Benistar Plan, are mixed questions of law and fact. They are questions of law to the extent this Court must review the Tax Court's interpretation of the legal standard. They are questions of fact to the extent this Court must review the Tax

19

Court's findings of historical fact. Many of these facts are not in dispute as the parties stipulated to various aspects of Petitioners' involvement in the Benistar Plan and to *Curcio*'s record regarding the nature of the Benistar Plan. Nevertheless, application of the facts to the legal standard in this case involves mixed questions of law and fact, which this Court reviews *de novo*. *Diebold Found.*, 736 F.3d at 183.

**II.    Accuracy-Related Penalties Under I.R.C. § 6662A**

I.R.C. § 6662A provides: "If a taxpayer has a reportable transaction understatement for any taxable year, there shall be added to the tax an amount equal to 20 percent of the amount of such understatement." I.R.C. § 6662A(a). A "reportable transaction understatement" includes any understatement attributable to a "listed" transaction. *Id.* § 6662A(b)(2)(A). A listed transaction, in turn, is a transaction that "is the same as, or substantially similar to, a transaction specifically identified by the Secretary [of the Treasury]

as a tax avoidance transaction." *Id.* § 6707A(c)(2). Finally, IRS regulations define a transaction to be "substantially similar to" a listed tax-avoidance transaction if it is "expected to obtain the same or similar types of tax consequences and . . . is either factually similar [to] or based on the same or similar tax strategy" as the listed tax-avoidance transaction.[8] Treas. Reg. § 1.6011-4(c)(4) (as amended in 2010); *see* Tax Shelter Regulations, 68 Fed. Reg. 10,161, 10,167 (Mar. 4, 2003).

Thus, the question before us is whether the Benistar Plan was expected to obtain similar tax consequences as, and is either factually similar to or based on a similar tax strategy as, the tax-avoidance arrangements described by the IRS in Notice 95-34. For

---

[8] Petitioners do not challenge the IRS's authority to promulgate a regulation interpreting the term "substantially similar to" as used in I.R.C. § 6707A(c)(2), nor do they argue that the IRS's interpretation of the I.R.C. is not entitled to deference. We simply note that "[b]ecause Congress has delegated to the Commissioner the power to promulgate 'all needful rules and regulations for the enforcement of [the Internal Revenue Code],' 26 U.S.C. § 7805(a), we must defer to his regulatory interpretations of the Code so long as they are reasonable." *McNamee v. Dep't of the Treasury*, 488 F.3d 100, 106 (2d Cir. 2007) (quoting *Cottage Sav. Ass'n v. Comm'r*, 499 U.S. 554, 560-61 (1991)).

the reasons set forth below, we hold that the Benistar Plan is substantially similar to the arrangements described in Notice 95-34. We therefore uphold the Commissioner's accuracy-related penalties against Petitioners under § 6662A.

*A. The Tax-Avoidance Transaction Identified in Notice 95-34*

The IRS published Notice 95-34 as formal guidance in 1995 and classified the arrangements described therein as "listed" tax-avoidance transactions in 2000.[9] *See* I.R.S. Notice 95-34, 1995-1 C.B. 309; I.R.S. Notice 2000-15, 2000-1 C.B. 826. Notice 95-34 describes welfare benefit trusts that ostensibly "provide benefits such as life insurance, disability, and severance pay benefits" to employees. I.R.S. Notice 95-34, 1995-1 C.B. 309. The trusts claim to be multiple-

_____

[9] The IRS originally published Notice 95-34 after certain "Voluntary Employee Beneficiary Associations" plans came to its attention. The IRS published Notice 95-34 to make clear that it did not consider these plans to comply with the tax code, and that deductions under such tax-avoidance plans would be disallowed. *See generally Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 502 (3d Cir. 2006). It was not until 2004, however, that Congress created additional accuracy-related penalties under § 6662A for improper deductions attributable to listed tax-avoidance transactions, such as the transaction identified in Notice 95-34. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004).

employer welfare benefit plans that qualify for I.R.C. § 419A(f)(6)'s exemption from limits on the amount of plan contributions eligible for deduction. *Id.* However, these plans "require large employer contributions relative to the cost of the amount of term insurance that would be required to provide the death benefits under the arrangement." *Id.* The plans also "often maintain separate accounting of the assets attributable to the contributions made by each subscribing employer," which "pursuant to formal or informal arrangements or practices . . . insulates the employer to a significant extent from the experience of other subscribing employers." *Id.* Although "benefits may appear to be contingent on the occurrence of unanticipated future events, in reality, most participants and their beneficiaries will receive their benefits" because trust administrators can "cash[] in or withdraw[] the cash value of the insurance policies." *Id.*

Notice 95-34 concludes that these arrangements do not satisfy

the requirements for § 419A(f)(6)'s exemption "for any one of several reasons, including the following": (1) the arrangements may be providing deferred compensation; (2) the arrangements may be a collection of separate plans rather than a single multiple-employer plan; (3) the arrangements may be "experience rated" with respect to individual employers because the trusts maintain separate accounting, and employers expect that their contributions will benefit only their employees; and (4) contributions under the arrangements may represent prepaid expenses that are nondeductible. *Id.*

### B. The Benistar Plan's Substantial Similarity to the Transaction Identified in Notice 95-34

As mentioned, we base our substantial similarity analysis on *Curcio*'s record, supplemented by the additional facts relevant to the Clinic and the Prossers. That record reflects the following factual and tax strategy similarities between the Benistar Plan and the transaction identified in Notice 95-34:

24

1. The Benistar Plan claimed to satisfy the requirements for the multiple-employer exemption under I.R.C. § 419A(f)(6), and the purported benefits of enrollment included "Virtually Unlimited Deductions." *See Curcio*, 2010 WL 2134321, at *5.

2. The Benistar Plan offered life insurance policies that allowed large contributions relative to the cost of the amount of term insurance required to provide the corresponding death benefits under the arrangement. *See id.* at *21.

3. Benistar Plan participants acted as though they personally owned the underlying policies, and the Benistar Plan was merely a conduit to the policies rather than the actual insurer. *See id.* at *18.

4. The Benistar Plan maintained separate accounting of each employer's assets based on that employer's contributions, which helped insulate contributions and benefits from the participation of other subscribing employers. *See id.* Correspondingly, contributions were used only for the policies to which they were allocated. *See id.*

at *5.

5. Benistar Plan participants had the right to receive—and most participants did in fact receive—the value reflected in the underlying insurance policies with minimal expense by terminating participation in the Plan, despite payment of benefits supposedly being contingent upon unanticipated events. *See id.* at *13, *20. Daniel Carpenter, the creator of the Benistar Plan, acknowledged that there was no reason to ever forfeit an underlying insurance policy so long as Benistar Plan participants were willing to abide by the Plan's distribution policies. *See id.* at *20.

Based on these factual similarities and the common tax-avoidance strategy of allowing (i) large tax-free contributions far exceeding the cost of maintaining the underlying insurance coverage, (ii) individual funding and control of the policies, and (iii) retrieval of the policies with minimal expense, we hold that the Benistar Plan is substantially similar to the listed tax-avoidance

26

transaction identified in Notice 95-34. The Commissioner therefore properly assessed § 6662A penalties against Petitioners for understatements attributable to the Clinic's Benistar Plan contribution.[10] We need not identify whether any one factor in particular is necessary for determining that a transaction is substantially similar to a listed tax-avoidance transaction. Rather, it is sufficient under the I.R.C. and IRS regulations that the Benistar Plan replicates the primary mechanics of and shares a common tax-avoidance strategy with the transaction identified in Notice 95-34.

Petitioners principally argue that to be substantially similar to a listed transaction, the Benistar Plan must fail to satisfy § 419A(f)(6)'s exemption requirements for all four of the reasons explained in Notice 95-34. However, Notice 95-34 provides that

[10] As we have noted in prior decisions, one might also consider "whether some level of deference ought to be given to the Commissioner's interpretation of the Treasury's own regulations" in analyzing whether the Benistar Plan is substantially similar to the transaction identified in Notice 95-34. *Robinson Knife Mfg. Co. v. Comm'r*, 600 F.3d 121, 134 n.11 (2d Cir. 2010) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). However, "we need not decide whether *Auer* deference applies here" because "the Commissioner has not argued *Auer* deference," and "even if we were to apply *Auer*, we would not reach a different result." *Id.*

27

"[*i*]*n general*, these arrangements and other similar arrangements do not satisfy the requirements of the [§] 419A(f)(6) exemption and do not provide the tax deductions claimed by their promoters *for any one of several reasons*." I.R.S. Notice 95-34, 1995-1 C.B. 309 (emphases added). By using "in general" and "for any one of several reasons," Notice 95-34 clearly indicates it is not necessary that an arrangement fail to satisfy § 419A(f)(6)'s exemption requirements for every one of the reasons provided. Indeed, Notice 95-34 itself identifies a fifth reason: contributions to such plans may not qualify as "ordinary and necessary business expenses of the taxpayer [under I.R.C. § 162(a)]." *Id.* That is the very reason contributions to the Benistar Plan are not deductible. *See Curcio*, 689 F.3d at 226 (describing the Benistar Plan as "a mechanism by which [owners of participating businesses] could divert company profits, tax-free, to themselves, under the guise of cash-laden insurance policies"). Nor do the reasons provided constitute an exhaustive list as to why plans like these do

28

not satisfy the requirements for § 419A(f)(6)'s exemption.

At any rate, the record shows that the Benistar Plan is, like the transaction described in Notice 95-34 in both its earlier paragraphs and in reason three, "experience rated" in that the Plan maintained, "formally or informally, separate accounting for each employer and the employers ha[d] reason to expect that, at least for the most part, their contributions [would] benefit only their own employees." I.R.S. Notice 95-34, 1995-1 C.B. 309. The record establishes that the Benistar Plan maintained separate accounting for each participating employer, and that contributions were used only for the policies to which they were allocated. *Curcio*, 2010 WL 2134321, at *5, *18.

We also reject Petitioners' argument that the substantial similarity analysis cannot rely on the paragraphs in Notice 95-34 that precede the four listed "reasons" contained in the Notice. Petitioners describe these preceding paragraphs as "introductory" and as a "preamble." However, Petitioners misrepresent the nature

29

of these paragraphs and their relationship to the "reasons" that follow them. These paragraphs describe the particular factual characteristics of the typical tax-avoidance transaction considered by Notice 95-34 and include a substantial description of their common elements. By describing the factual characteristics of these schemes, these paragraphs are especially relevant to whether a plan is substantially similar to the arrangements identified in Notice 95-34. The "reasons" that follow merely explain why contributions to the plans described in the preceding paragraphs do not constitute "ordinary and necessary" expenses under I.R.C. § 162(a), and why the plans do not qualify as multiple-employer welfare benefit trusts under § 419A(f)(6).

**III.    Increased Penalty Rate Under § 6662A(c)**

I.R.C. § 6662A generally imposes accuracy-related penalties at a rate of twenty percent of the amount of the understatement attributable to the listed transaction. I.R.C. § 6662A(a). However,

§ 6662A increases the penalty rate to thirty percent when disclosure requirements under § 6664(d)(2)(A)[11] are not satisfied. *Id.* § 6662A(c). Section 6664(d)(2)(A) requires "adequate[] disclosure" of "the relevant facts affecting the tax treatment" of the transaction in accordance with IRS regulations. *Id.* § 6664(d)(2)(A). These disclosures are intended to provide the IRS with information needed to evaluate potentially abusive transactions. *See* Modification of Tax Shelter Rules III, 67 Fed. Reg. 41,324, 41,325 (June 18, 2002).

A taxpayer has participated in a listed transaction and must therefore disclose the relevant facts affecting the tax treatment of that transaction "if the taxpayer's tax return reflects tax consequences or a tax strategy described in the [IRS's] published guidance" or "if the taxpayer knows or has reason to know that the taxpayer's tax benefits are derived directly or indirectly from tax consequences or a tax strategy described in published guidance."

---

[11] As discussed previously, § 6664(d)(2)(A) was redesignated as § 6664(d)(3)(A) in 2010 after the tax years at issue in this case.

31

Treas. Reg. § 1.6011-4(c)(3)(i)(A). These facts must be disclosed on Form 8886, a "Reportable Transaction Disclosure Statement." *Id.* § 1.6011-4(a), (d). The information provided on Form 8886 must "describe the expected tax treatment and all potential tax benefits expected to result from the transaction, describe any tax result protection . . . with respect to the transaction, and identify and describe the transaction in sufficient detail for the IRS to be able to understand the tax structure of the reportable transaction." *Id.* § 1.6011-4(d).

The Commissioner determined that the increased thirty-percent penalty under § 6662A(c) applied to the Clinic because its understatement was attributable to a listed transaction, and the Clinic did not disclose the relevant facts affecting the Benistar Plan's tax treatment on Form 8886. We agree with the Commissioner's determination. The parties stipulated that the Clinic did not disclose its participation in, or the facts surrounding its participation in, the

Benistar Plan on Form 8886 or any similar document. Thus, the Clinic is liable for the increased thirty-percent penalty rate under § 6662A(c) for failing to make such disclosures.

**IV.    Fair Warning**

Petitioners also argue that they had no "fair warning" of accuracy-related penalties under § 6662A because the section is unclear and the application of § 6662A in the context of the Benistar Plan is difficult to understand. We disagree.

Due process "requires that before a[n] . . . administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible." *Cnty. of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179, 195 (2d Cir. 2001). In the context of administrative penalties for failure to pay a tax, the Due Process Clause's fair warning requirement "is satisfied through the notice provided by the statute that establishes the obligation to pay" the underlying tax.

*Id.*; *cf. United States v. Mfrs. Nat'l Bank of Detroit*, 363 U.S. 194, 200 (1960) (explaining that IRS "regulations gave the insured fair notice of the likely tax consequences" of a taxable event).

Notice 95-34 was promulgated in June 1995, *see* I.R.S. Notice 95-34, 1995-1 C.B. 309, and the transaction identified by Notice 95-34 was formally classified as a "listed" tax-avoidance transaction in March 2000, *see* I.R.S. Notice 2000-15, 2000-1 C.B. 826. Penalties under § 6662A were enacted on October 22, 2004, and made effective for tax years ending after that date. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 812(f), 118 Stat. 1418, 1580. Section 6707A, which defines a listed transaction as one that is "substantially similar to" a tax-avoidance transaction, was also enacted on October 22, 2004. *See id.* § 811, 118 Stat. at 1575. The IRS regulation defining "substantially similar" as "factually similar [to] or based on the same or similar tax strategy" was promulgated on March 4, 2003. *See* Treas. Reg. § 1.6011-4(c)(4) (as amended in 2010); Tax Shelter

34

Regulations, 68 Fed. Reg. 10,161, 10,167 (Mar. 4, 2003). Disclosures of listed transactions on Form 8886 were required beginning March 4, 2003, as well. *See* Treas. Reg. § 1.6011-4(d) (as amended in 2010); Tax Shelter Regulations, 68 Fed. Reg. at 10,168. Finally, the relevant tax years in this case ended on December 31, 2004, for the Prossers, and March 31, 2005, for the Clinic.

Because the relevant statutes and regulations, as well as Notice 95-34, were all in effect prior to the end of the tax years at issue, we hold that Petitioners had adequate notice of accuracy-related penalties under § 6662A. "The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation." *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971). To the extent Petitioners attempt to rely on a legal opinion letter asserting that the Benistar Plan qualifies as a proper § 419A(f)(6) multiple-employer benefit fund, we explained in *Curcio* that the law firm's letter "made

35

no guarantees as to the deductibility of Plan contributions." *Curcio*, 689 F.3d at 229. Indeed, "the letters specifically warned" Petitioners that Benistar Plan contributions may not be deductible. *Id.*

While *this Court* has not previously held that the Benistar Plan was "substantially similar" to a listed tax-avoidance transaction, this is not a case resolving ambiguous statutory language. None of the relevant provisions in I.R.C. §§ 419, 419A, 6662A, 6664, or 6707A, or Notice 95-34 are unclear or difficult to apply. When it is clear that a transaction is substantially similar to a listed tax-avoidance transaction under the I.R.C. and IRS regulations, participants have fair warning of § 6662A penalties even if a court has not held the transaction to be substantially similar to a listed transaction.

**V. The Commissioner's Burden of Proof**

Finally, Petitioners argue that for the reasons set forth in their brief, the Commissioner failed to meet his burden of proof to demonstrate that § 6662A penalties were appropriate. The IRS has

"the burden of production in any court proceeding with respect to the liability of any individual for any [tax] penalty." I.R.C. § 7491(c). For the reasons set forth in this opinion, we hold that the Commissioner met his burden of proof.

**CONCLUSION**

For the foregoing reasons, we hold that the Benistar Plan is substantially similar to the listed tax-avoidance transaction identified by the IRS in Notice 95-34. We therefore uphold the Commissioner's assessment of accuracy-related penalties against the Prossers and the Clinic under I.R.C. § 6662A. We also hold that Petitioners had adequate notice of the potential for penalties under § 6662A and that the increased penalty rate under § 6662A(c) applies to the Clinic. Accordingly, we **AFFIRM** the decisions of the Tax Court.