In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2441

VEE'S MARKETING, INC.,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:13-cv-00481-bbc— **Barbara B. Crabb**, *Judge*.

ARGUED JANUARY 6, 2016— DECIDED MARCH 14, 2016

Before POSNER and WILLIAMS, *Circuit Judges*, and
PALLMEYER, *District Judge*.[*]

POSNER, *Circuit Judge*. The plaintiff, a broker of fresh on-
ions (see "Vee's Marketing, Inc.," http://veesmarketing.com/
(visited March 14, 2016, as were the other websites cited in
this opinion)), is a Subchapter S corporation wholly owned

---

[*] Hon. Rebecca R. Pallmeyer of the Northern District of Illinois, sitting by
designation.

by Scott Vee. The corporation's income is therefore reported on Mr. Vee's own tax returns. Since he effectively *is* the corporation, we'll call the plaintiff Vee rather than Vee's Marketing.

Vee appeals from the dismissal of his suit for a refund of penalties that the Internal Revenue Service had assessed because he took deductions for contributions to a welfare benefit plan from 2004 through 2007 but didn't file a report (Form 8886, Reportable Transaction Disclosure Statement) with the Internal Revenue Service disclosing his participation in the plan. The IRS requires such disclosure because it deemed IRS Notice 95-34 to require a taxpayer to report his participation in this type of plan. The IRS assessed and collected from Vee a penalty of $10,000 a year for each of the four years in which he'd failed to file the report, for a total of $40,000. Vee sues for the return of this money. See 26 U.S.C. §§ 6532(a), 7422(a). At the conclusion of a bench trial the district judge ruled for the government.

In a separate suit, pending in the Tax Court, the government is arguing that the deductions that Vee took for his contributions to the welfare benefit plan were improper. But that issue is not presented by the present suit, which is limited to the disclosure issue.

Vee was required to file Form 8886 if he participated in what is called a "listed transaction," defined as a transaction identical or at least substantially similar to a transaction that the Internal Revenue Service has labeled a listed transaction in published guidance to taxpayers, meaning a transaction intended to avoid federal income tax liability unlawfully. See 26 U.S.C. § 6707A; 26 C.F.R. §§ 1.6011-4(a), (b)(2), (c)(3)(i)(A), (d); IRS Notice 2000-15, 2000-1 C.B. 826.

A company called CJA and Associates (we'll call it CJA) advertises that it "specializes in the design and marketing of innovative insurance products and employee benefit plans for the small business and estate planning markets." CJA & Associates, www.cjamarketing.com/. One of the company's products was an employee benefit plan called the "CJA Affiliated Employers Health & Welfare Trust," also known as the "Prepare Plan." See CJA & Associates, "Prepare Plan," https://cjamarketing.com/prepare_plan.html. We'll just call it the plan. CJA marketed it as a "10 or more employer plan" that qualifies for favorable tax treatment. See Thomas J. Handler, "Multiple Employer Welfare Benefit Plans Have Advantages for Employees and Executives," 3 *J. Taxation of Employee Benefits*, May/June 1995, p. 10. Contributions to such a plan are deductible from federal income tax unless— and this brings us to the crux of the case—the plan "maintains experience-rating arrangements with respect to individual employers." 26 U.S.C. § 419A(f)(6).

Experience rating in this context means that rather than pooling the risks borne and contributions made by all the employees of the different employer members of the plan in determining benefits, plan benefits are determined separately for each employer in accordance with that employer's contributions to the plan. 26 C.F.R. §§ 1.419A(f)(6)-1(b)(1), (d)(3). If an employer's contributions go to purchase life insurance policies that accumulate cash value because the contributions are invested, the contributions are not tax deductible, *id.* § 1.419A(f)(6)-1(f), Example 6, because such a plan is mainly an investment vehicle rather than an insurance policy. See "10 or More Employer Plans," 68 Fed. Reg. 42254, 42254–56 (July 17, 2003).

CJA's marketing materials describe contributions to the plan sold to Vee as intended to be used either to finance pre- and post-retirement life insurance benefits—that is, provide money to the insured's beneficiaries—or to provide retirement medical benefits to the insured. Vee's plan document contained no provision for medical benefits, however, and was oriented less to funding death benefits than to providing cash for him or his beneficiaries to use as they pleased. He deducted the contributions from his taxable income, and that's where Notice 95-34 bit. The Internal Revenue Service contends that Vee's plan is a "listed transaction" (the term does not appear in Notice 95-34, but a subsequent Notice, 2000-15, states that the transaction described in Notice 95-34 is indeed a listed transaction), so classified because it involves plan contributions that exceed the cost of the term life insurance (one-year insurance that yields proceeds only if the employee dies during that year, and that has no cash value), which is all that the contributions buy. The excess of contributions over expense leaves the plan administrator with a surplus with which to provide other benefits to the plan's beneficiaries.

And like the transaction described in Notice 95-34, Vee's plan is experience rated, meaning as we said that the employer's contributions are allocated to his own employees. This feature too is inconsistent with the premise of a 10 or more employers benefit plan that contributions and risks are to be pooled. In effect though not in name Vee's plan is what is called a "universal life insurance contract." Such a contract provides both current life insurance and a savings feature. Vee's contribution to his CJA plan in its first year was $165,000, but the cost of the term life insurance bought with that money was only $5,400, the difference (minus some fees

paid to CJA and to the insurance company maintaining the account) being placed in an "accumulation account" (also referred to as a "reserve account"). The account earns interest for and is the property of the employee-contributor—Vee.

When later Vee strategically terminated his participation in the plan, the plan used $147,000 from the reserve account to buy a paid-up life insurance policy for Vee with a face value of $400,000. That was the amount payable upon Vee's death to his beneficiaries, but it wasn't all that the reserve account could be used for. CJA told its customers that the paid-up policy could be sold, and it even helped find buyers. As explained in *Ohio National Life Assurance Corp. v. Davis*, 803 F.3d 904, 908 (7th Cir. 2015), it is lawful in many states (including Vee's state, Wisconsin, although generally not until five years after the issuance of the policy, see Wis. Stat. § 632.69(12)) to purchase the beneficial interest in an existing policy on the life of the insured. Vee thus could if he wanted sell the beneficial interest in his post-retirement life insurance policy. He would be taxed on his income from the sale but he would not have been taxed on the income that had gone into his accumulation reserve and thus financed his acquisition of the life insurance policy that he then sold.

Vee was obtaining a tax deduction not only for payments that he made for the purchase of term life insurance but also for payments that he could use to fund benefits that do not qualify as health or welfare benefits, even though the plan is a health and welfare benefit plan. As explained in *Prosser v. Commissioner*, 777 F.3d 582, 585 (2d Cir. 2015), quoting *Curcio v. Commissioner*, 689 F.3d 217, 226 (2d Cir. 2012), such contributions are "a mechanism by which [owners of

participating businesses—Vee is such an owner] could divert company profits, tax-free, to themselves, under the guise of cash-laden insurance policies that were purportedly for the benefit of the businesses, but were actually for petitioners' personal gain." If Vee keeps rather than sells his life insurance, upon his death the benefits will accrue to the beneficiaries designated in the insurance policy. Any benefit plan that allows Vee to convert tax-free contributions to guaranteed payments for either himself (the owner—an "employee" only in name) or his beneficiaries is a listed transaction within the meaning of Notice 95-34.

The CJA plan was enough like the questionable plan described in the notice to require listed-transaction notice to the IRS on Form 8886. Vee failed to file the form and therefore was properly penalized to the tune of $10,000 a year for the four years in which he took tax deductions without reporting his participation in the plan.

AFFIRMED